OCCIDENTAL CHEMICAL COR-
PORATION and Gibson Dunn
& Crutcher, Relators,

v.

The Honorable Manuel BANALES,
Judge, Respondent.

No. 95–0480.

Supreme Court of Texas.

June 15, 1995.

___

Joe R. Greenhill, Bob E. Shannon, Joseph R. Knight, Austin, M.W. Meredith, Jr., Clay E. Coalson, Carlos A. Mattioli, J.A. Canales, Corpus Christi, John R. Crews, Dallas, Douglas E. Chaves, Paul W. Nye, Corpus Christi, for relators.

Jeanette Cantu–Bazar, Angelina Beltran, Michael G. Terry, Douglas A. Allison, Rene Rodriguez, Guy H. Allison, Steve T. Hastings, Rose Vela, Corpus Christi, for respondent.

PER CURIAM.

This original mandamus proceeding involves an order that an attorney produce her notes to adverse counsel as a sanction for discovery abuse. We conditionally grant the writ of mandamus.

The underlying suit is a class action toxic tort proceeding. Occidental Chemical (Oxy-Chem) conducted a flaring operation in Corpus Christi. While burning off gases emitted from chemicals that had been delivered by barge, the flame went out and a chemical cloud formed which wafted into the Robstown area. Numerous Robstown residents became ill after the incident, and these representative plaintiffs assert the chemical cloud accident caused the illness and injury.

One of the crucial issues in the case is whether only "ordinary byproducts" of butadiene production were released, or whether some harmful concentrations of toxic chemicals were released. On this issue and several weeks into a lengthy jury trial, the plaintiffs called Billy Riggs, a witness they located only shortly before trial. Riggs was an employee of an independent contractor working for the barge company the day of the accident. He testified that he smelled "pi gas" which would have consisted of a mixture of highly toxic chemicals such as benzene, toluene, and xylene. During his testimony, he revealed that defense attorney Kim McGovern had interviewed him over a year before the trial, that he told her what he observed and that he had concluded that toxic chemicals were involved.

The next day, the plaintiffs filed a motion for sanctions for OxyChem's counsel's failure to disclose Riggs' name in answer to interrogatories. At the hearing, the plaintiffs offered the testimony of Riggs. John Crews, lead defense counsel for OxyChem, offered the explanation that they had to make decisions on how to separate irrelevant names from relevant ones, and that because they had concluded that "pi gas" was natural to the ordinary production of butadiene, they omitted several names. He named seven other similarly situated potential, but omitted, witnesses. Later, when McGovern testified, she added more omitted names bringing to ten the additional potential witnesses similarly situated to Riggs. She suggested that it was more of an oversight or lack of communication by one half of the defense team with the other half that produced the omission.

Concluding that OxyChem's counsel had intentionally hidden the names of fact witnesses known to be potentially adverse to defense positions, the trial court imposed a monetary sanction against the law firm, Crews, and McGovern of $860,000.00. He further ordered that all of McGovern's notes of interviews with or activities of all such undisclosed potential witnesses be produced to plaintiffs. Only these McGovern notes are in issue here; the monetary sanction is not before us.

After an *in camera* inspection, we agree with relators' assertion that the McGovern notes are attorney work product. OxyChem claims that the work product privilege is "absolute," so that the judge could not order them produced, at least not as a discovery sanction. Alternatively, it argues that the fault lies with their attorneys and that the privilege belonging to the client, OxyChem, cannot be broached to sanction the attorneys' misconduct. Additionally, OxyChem argues that even if the privilege is not absolute, the plaintiffs could not claim the fraud and offensive use exceptions to the attorney work product privilege because they failed to expressly assert them and the production order is not justified as a sanction under the circumstances.

The attorney work product privilege protects two related but different concepts. First, the privilege protects the attorney's thought process, which includes strategy decisions and issue formulation, and notes or writings evincing those mental processes. Second, the privilege protects the mechanical compilation of information to the extent such compilation reveals the attorney's thought processes. *See Nat'l Union Fire Ins. Co. v. Valdez*, 863 S.W.2d 458, 461 (Tex.1993) (noting that an attorney's litigation file goes to the heart of the work product exemption and citing federal authority holding that "an attorney's selection and ordering of documents in anticipation of litigation is protected work product even where the individual documents are not privileged"). The work product exemption is of continuing duration. *Owens–Corning Fiberglas Co. v. Caldwell*, 818 S.W.2d 749, 751–52 (Tex.1991).

With respect to an attorney's thought processes, we agree with OxyChem that the work product privilege is absolute, subject only to the narrow exceptions found in the Texas Rules of Civil Procedure. *See* TEX. R.CIV.P. 166b(3)(a) (an attorney's work product privilege is subject to exceptions listed in TEX.R.CIV.EVID. 503(d)). To the extent the trial judge's order does not fit within these exceptions and would cause the breach of the work product privilege by requiring attorneys for OxyChem to reveal their thought processes, we agree that the order to produce the notes was an abuse of discretion.

With respect to compiled information that reveals an attorney's thought processes, the privilege is not absolute. For example, the work product privilege may be waived under the offensive use doctrine. *See Nat'l Union*, 863 S.W.2d at 461. Even though rule 215 of the Texas Rules of Civil Procedure does not expressly mention production of work product or other privileged documents as a sanction for discovery abuse, we cannot agree with OxyChem that the latter type of work product production can never be imposed as a sanction. Orders that privileged documents be produced must be an option *for discovery abuse, if the court correctly finds the abuse has waived or otherwise invalidated the privilege.*

Concluding that production of information compiled by an attorney is a possible sanction even though the information is the attorney's work product does not end the inquiry. The sanction imposed for discovery abuse should be no more severe than necessary to satisfy the legitimate purposes of the discovery process offended. *TransAmerican Natural Gas Corp. v. Powell*, 811 S.W.2d 913, 917 (Tex.1991). The work product privilege is essential to the attorney-client relationship. *Owens–Corning*, 818 S.W.2d at 751. Requiring the production of the attorney's notes from interviews of witnesses is a severe sanction and should receive an appropriately strict review. Piercing the work product privilege, like the "death penalty" sanction, should apply only when lesser sanctions are inadequate to correct the discovery abuse that has occurred, i.e., when it is the only appropriate sanction. *Cf. TransAmerican Natural Gas Corp.*, 811 S.W.2d at 917. Here the record does not reflect why lesser traditional sanctions might not cure the discovery abuse. *See, e.g.,* TEX.R.CIV.P 215(2)(b) (requiring sanction to be just); *see also TransAmerican Natural Gas Corp.*, 811 S.W.2d at 918 (interpreting TEX.R.CIV.P. 215). For example, the record does not indicate that any of the ten undisclosed potential witnesses are unavailable and not subject to examination by plaintiffs. We should not be understood as holding that production of attorney work product notes concerning witness interviews can never be appropriate; rather, we conclude that it is not appropriate in this case.

The trial court's erroneous order to produce the privileged notes leaves OxyChem without an adequate remedy by appeal. *Walker v. Packer*, 827 S.W.2d 833, 843 (Tex. 1992). Accordingly, without hearing oral argument, a majority of the Court conditionally grants Relators' petition for a writ of mandamus directing the trial court to vacate its order compelling production of McGovern's notes. TEX.R.APP.P. 122. A writ of mandamus will issue only if the trial court fails to comply.