# IN THE SUPREME COURT OF TEXAS

════════════
No. 15-0591
════════════

IN RE NATIONAL LLOYDS INSURANCE COMPANY,
WARDLAW CLAIMS SERVICE, INC., AND IDEAL ADJUSTING, INC., RELATORS

═══════════════════════════════════════════════════════
ON PETITION FOR WRIT OF MANDAMUS
═══════════════════════════════════════════════════════

**Argued February 7, 2017**

JUSTICE GUZMAN delivered the opinion of the Court, in which CHIEF JUSTICE HECHT, JUSTICE GREEN, JUSTICE WILLETT, JUSTICE DEVINE, and JUSTICE BROWN joined.

JUSTICE JOHNSON filed a dissenting opinion, in which JUSTICE LEHRMANN and JUSTICE BOYD joined.

The discovery dispute in this mandamus proceeding arises in the context of multidistrict litigation involving allegations of underpaid homeowner insurance claims. The issue is whether a party's attorney-billing information is discoverable when the party challenges an opposing party's attorney-fee request as unreasonable or unnecessary but neither uses its own attorney fees as a comparator nor seeks to recover any portion of its own attorney fees. We hold that, under such circumstances, (1) compelling en masse production of a party's billing records invades the attorney work-product privilege; (2) the privilege is not waived merely because the party resisting discovery

has challenged the opponent's attorney-fee request; and (3) such information is ordinarily not discoverable.[1]

To the extent factual information about hourly rates and aggregate attorney fees is not privileged, that information is generally irrelevant and nondiscoverable because it does not establish or tend to establish the reasonableness or necessity of the attorney fees an opposing party has incurred.[2] A party's litigation expenditures reflect only the value that party has assigned to litigating the matter, which may be influenced by myriad party-specific interests. Absent a fee-shifting claim, a party's attorney-fee expenditures need not be reasonable or necessary for the particular case. Barring unusual circumstances, allowing discovery of such information would spawn unnecessary case-within-a-case litigation devoted to determining the reasonableness and necessity of attorney-fee expenditures that are not at issue in the litigation. This is not a proper discovery objective. We therefore conditionally grant mandamus relief and direct the trial court to vacate its discovery order.

### I. Factual and Procedural Background

Following two hail storms that struck Hidalgo County in 2012, insured homeowners sued various insurers and claims adjustors, alleging underpayment of insured property-damage claims. The lawsuits were consolidated into a single multidistrict litigation (MDL) court for pretrial proceedings, including discovery.[3]

---

[1] *See* TEX. R. CIV. P. 192.5(b).

[2] *See* TEX. R. EVID. 401 (defining relevant evidence as having "any tendency to make a fact more or less probable than it would be without the evidence"); TEX. R. CIV. P. 192.3 (extending the scope of discovery to relevant nonprivileged information, including relevant evidence that is inadmissible but "reasonably calculated to lead to the discovery of admissible evidence").

[3] *See* TEX. R. JUD. ADMIN. 13, *reprinted in* TEX. GOV'T CODE, tit. 2, subtit. F app.

The discovery dispute in this mandamus proceeding involves four MDL cases in which individual homeowners sued National Lloyds Insurance Co., Wardlaw Claims Service, Inc., and Ideal Adjusting, Inc. (collectively, the insurer),[4] asserting statutory, contractual, and extra-contractual claims. Among other damages, the homeowners seek attorney fees incurred in prosecuting their statutory and contractual claims. In addition to assailing the merits of the homeowners' liability claims, the insurer asserts the homeowners' attorney-fee claims are excessive for a case of comparable complexity in the relevant locality.

A mere two months before trial, and nearly a year after the parties served MDL master discovery requests, the homeowners requested a trial continuance and sought leave to serve additional discovery regarding the insurer's attorney-billing information. Though the insurer is not making a claim for attorney fees,[5] the homeowners submitted (1) three interrogatories requesting hourly rates, total amount billed, and total reimbursable expenses; and (2) four requests for production seeking all billing invoices; payment logs, ledgers, and payment summaries; audits; and any documents pertaining to flat-rate billing.[6] The homeowners asserted additional discovery was

---

[4] The homeowners also sued individual adjusters who are not parties to this proceeding.

[5] The insurer acknowledges it made an offer of settlement, which could result in the insurer recovering attorney fees in the future. *See* TEX. R. CIV. P. 167. If that event occurs, however, the civil-procedure rules permit the "party against whom litigation costs are to be awarded" to seek leave to conduct discovery concerning the reasonableness of the costs to be recovered. TEX. R. CIV. P. 167.5(b).

[6] The specific discovery requests at issue are as follows:

Interrogatories:
      (1) State the hourly rate of any and all attorneys who have provided legal services to this Defendant in this case;
      (2) State the total amount billed by each law firm providing legal services to this Defendant in this case up to and including the time of trial; and
      (3) State the total amount of reimbursable expenses incurred by any law firm providing legal

3

warranted "in light of" expert testimony in *Amaro v. National Lloyds Insurance Co.*,[7] the first MDL

hailstorm case to proceed to a jury verdict.

According to the homeowners, the insurer's attorney fees and billing information are

discoverable in the present cases because the insurer's counsel, Scot Doyen, testified as an

attorney-fee expert in *Amaro* and admitted on cross-examination—albeit over objection—that an

opposing party's fees could be considered as "a factor" in determining a reasonable fee recovery.

Doyen also used his law firm's billing practices as an example of a proper way to allocate attorney

fees to avoid an artificially inflated fee claim in MDL cases.[8]  Prior to Doyen's testimony in *Amaro*,

---

services to this Defendant in this case up to and including the time of trial.

Requests for Production:
 (1) Produce all billing invoices received by Defendant and/or any of the firms the named attorneys are affiliated with or employed by, in connection with this case;
 (2) Produce all payment logs, ledgers, or payment summaries showing all payments paid to Defendants' attorneys and/or any of the firms that the named attorneys are affiliated with or employed by, in connection with this case;
 (3) [withdrawn discovery request not at issue in this appeal];
 (4) Please produce all documents that show the flat rate, if any, being paid to Defense Counsel and/or any of the firms that the named attorneys are affiliated with or employed by, in connection with their services on this case; and
 (5) Please produce all documents related to audits of the billing and/or invoices of Defense Counsel and/or any of the firms that the named attorneys are affiliated with or employed by, which were performed on behalf of Defendant in regards to the attorney services received by Defendant. This request is limited to the last five (5) years.  [The trial court further limited this request to "documents regarding the specific case in which the request is propounded"].

[7] Cause No. C-0304-13-H (206th Dist. Ct., Hidalgo County, Tex. Feb. 27, 2015).

[8] Doyen initially testified:

Well, I think that we have to look at the time components that are in some of these different entries. And I will tell you that . . . I don't [necessarily] take exception with . . . the amount of time that is in a given entry as much as I do a couple of them that I think the time spent should have been allocated across more than just the Amaro file.

. . . .

The Motion to Remand was filed in the Amaro case.  It was also filed in about a hundred other cases.

4

he had been designated in the underlying MDL case as a testifying expert in opposition to the homeowners' attorney-fee requests.

Based on the record in *Amaro*, the homeowners contend Doyen's expert testimony in these cases will necessarily be based on his experience as the insurer's attorney in the same proceedings and, more to the point, he has admitted that an opposing party's fees are relevant to the disputed attorney-fee issues. Accordingly, the homeowners argue that information about the insurer's attorney-fee expenditures is discoverable and relevant to the attorney-fee dispute.

The insurer objects on the basis that the requested discovery is overly broad and seeks information that is both irrelevant and protected by the attorney-client and work-product privileges. With regard to relevancy, the insurer principally relies on its stipulation that it "will not use its own billing invoices received from its attorneys; payment logs, ledgers, or payment summaries showing payments to its attorneys; or the hourly fees or flat rates being paid to its attorneys; audits of the

---

> When the lawyer shows up to attend that hearing, and what have to do in our fee bills [sic], for instance, the four hours for attending the hearing, I don't have a problem with. That's . . . a reasonable expenditure of time. But, for instance, [on] my side, the lawyer that I have there has to take that and then prorate that out over a number of files. Because you can't bill that four hours to every file, it would be as though you worked four hundred hours for that hearing and . . . that would never be reasonable. So you have to take that time and prorate it out. We do it on our side . . . .

As a point of clarification, Doyen later added:

> On the motion to remand, I think it was a four-hour hearing that I was talking about earlier, what struck me about this when I reviewed it was we prorated our time across every case on the appendix to which that—those motions apply. And I cannot say that the [plaintiffs' attorneys] did that the same way. If, in fact, they did not and only billed it to the file that was for that hearing, then the four hours would be appropriate because they did have somebody there for that period of time. And I don't know how it was billed inside their system, if—and they've put it on here with regard to it being this file and this file alone. If it was billed there, then I think that's completely appropriate to do. And . . . I don't have any indication [that] they did overbill it. And if I created that impression, then I apologize for that. But what struck me was the way we did it. We prorated it out across every one, but it has occurred to me that they may not have done it that way. They may have gone and billed it to just that one. If that's the case, then it's certainly appropriate to do so.

5

billing and invoices of its attorneys to contest the reasonableness of [the homeowners'] attorney's fees."

After two non-evidentiary hearings, a discovery special master recommended that (1) an opponent's attorney-billing information is, as a general proposition, relevant to the reasonableness of an attorney-fee request in the same case; (2) to the extent the discovery requests in this case seek material from an expert witness on the attorney-fee issue, the information falls within the scope of permissible discovery under Texas Rule of Civil Procedure 192.3(e); (3) some of the discovery requests should be more narrowly tailored, but the insurer's objections to the discovery requests as modified should be overruled; and (4) "[s]pecific records may be redacted for content protected by an appropriate privilege." Adopting these recommendations, the MDL pretrial court ordered the insurer to respond to the discovery requests.

The court of appeals denied the insurer's petition for mandamus relief.[9] While the court acknowledged that an opposing party's attorney-billing information may be irrelevant in a given case,[10] the court concluded the discovery order was not an abuse of discretion in the underlying cases because (1) an opposing party's attorney fees are germane to at least two factors that inform the "reasonable and necessary" attorney-fee inquiry, as set forth in *Arthur Andersen & Co. v. Perry*

---

[9] 2015 WL 4380929, at *6, ___ S.W.3d ___ (Tex. App.—Corpus Christi 2015).

[10] *Id.* at *4 (citing *MCI Telecomms. Corp. v. Crowley*, 899 S.W.2d 399, 403-04 (Tex. App.—Fort Worth 1995, orig. proceeding)).

6

*Equipment Corp.*;[11] (2) the *Arthur Andersen* factors are explicitly nonexclusive;[12] (3) the insurer's designated expert witness previously testified he based his opinion on his own personal experience in defending the same case in which he was testifying as an expert;[13] (4) the requested information is within the permissible scope of expert-witness discovery, as provided by Rule 192.3(e);[14] and (5) the insurer produced no evidence that redaction would be insufficient to protect its privileges.[15]

In this original proceeding, the insurer primarily relies on several lower-court cases declaring information about a party's attorney-fee expenditures is "patently irrelevant" to an opposing party's attorney-fee claim.[16] The insurer maintains that the *Arthur Andersen* factors do not contemplate discovery of an opposing party's attorney-billing information, arguing those factors are textually directed only to evidence about the claimant's attorney fees. The insurer also reasserts its privilege objections and disputes that its attorney fees are at issue in this litigation by virtue of the *Amaro* litigation.

---

[11] *Id.* at *5 (citing 945 S.W.2d 812, 819 (Tex. 1997) and TEX. DISCIPLINARY R. PROF'L CONDUCT 1.04(a), *reprinted in* TEX. GOV'T CODE tit. 2, subtit. G, app. A).

[12] *Id.* at *4 (citing *El Apple I, Ltd. v. Olivas*, 370 S.W.3d 757, 761 (Tex. 2012)).

[13] *Id.* at *4-5.

[14] *Id.* at *5.

[15] *Id.*

[16] *See In re Tex. Mut. Ins. Co.*, 358 S.W.3d 869, 872 n.3 (Tex. App.—Dallas 2012, orig. proceeding); *In re AIG Aviation (Tex.), Inc.*, No. 04-04-00291-CV, 2004 WL 1166560, at *1 (Tex. App.—San Antonio May 26, 2004, orig. proceeding) (mem. op.); *MCI Telecomms. Corp. v. Crowley*, 899 S.W.2d 399, 403-04 (Tex. App.—Fort Worth 1995, orig. proceeding); *see also Duininck Bros., Inc. v. Howe Precast, Inc.*, No. 4:06-CV441, 2008 WL 4411641, at *2 (E.D. Tex. Sept. 23, 2008).

Relying on authority from other jurisdictions, the homeowners argue trial courts have discretion to order disclosure of an opposing party's attorney-fee information and could permissibly compel production in this case. In addition to citing counsel's role as a testifying expert in this case and *Amaro* as supporting the trial court's discovery order, the homeowners rely on the concurring opinion in *El Apple I, Ltd. v. Olivas*,[17] which describes an opposing party's attorney fees as a "surer indicator[]" of the reasonableness of a fee request. With regard to privilege, the homeowners point to a dearth of evidence that redaction would be ineffective to protect any applicable privileges and argue, in the alternative, that attorney-billing information is not privileged as a matter of law or on the record before the Court.

Germania Farm Mutual Insurance Association filed an amicus brief supporting the insurer. Germania is a defendant in other cases pending before the MDL pretrial court and asserts the plaintiffs in those cases are seeking nearly identical discovery from Germania even though "Germania's counsel has not testified about attorney's fees in any MDL case or otherwise done anything to put Germania's attorney's fees at issue."

## II. Discussion

### A. Standard of Review

A trial court generally has discretion to determine the scope of discovery.[18] However, "[a] discovery order that compels production beyond the rules of procedure is an abuse of discretion for

---

[17] 370 S.W.3d at 766 (HECHT, J., concurring).

[18] *In re CSX Corp.*, 124 S.W.3d 149, 152 (Tex. 2003) (orig. proceeding).

8

which mandamus is the proper remedy."[19]   Under our procedural rules, the scope of discovery

extends to "any matter that is not privileged and is relevant to the subject matter of the pending

action."[20]  Mandamus relief is appropriate when, as in this case, a trial court compels production of

irrelevant information or information that is relevant but privileged.[21]   Because either condition

suffices to warrant mandamus relief, we first consider whether the requested information is

privileged.

### B. Privilege

The insurer asserted two privileges in response to the discovery requests:  the attorney-client

privilege and attorney work-product privilege.  Analogizing to our analysis in *National Union Fire*

*Insurance Co. v. Valdez*,[22] we hold that a request to produce all billing records invades a party's

work-product privilege because, cumulatively, billing records constitute a mechanical compilation

of information that, at least incidentally, reveals an attorney's strategy and thought processes.

### 1. Legal-Representation Privileges

The attorney-client privilege protects communications between attorney and client that are

(1) not intended to be disclosed to third parties and (2) made for the purpose of facilitating the

---

[19] *In re Nat'l Lloyds Ins. Co.*, 507 S.W.3d 219, 224 (Tex. 2016) (orig. proceeding) (quoting *In re Nat'l Lloyds Ins. Co.*, 449 S.W.3d 486, 488 (Tex. 2014) (orig. proceeding)).

[20] TEX. R. CIV. P. 192.3(a); *see also In re CSX Corp.*, 124 S.W.3d at 152.

[21] *See, e.g.*, *In re Nat'l Lloyds Ins. Co.*, 507 S.W.3d at 224-25 (granting mandamus relief when trial court ordered discovery of irrelevant information); *In re Living Ctrs. of Tex., Inc.*, 175 S.W.3d 253, 256 (Tex. 2005) (orig. proceeding) (granting mandamus relief when trial court ordered discovery of privileged information).

[22] 863 S.W.2d 458, 460-61 (Tex. 1993) (orig. proceeding).

rendition of professional legal services.[23]  The privilege promotes free discourse between attorney

and client, thereby advancing the effective administration of justice.[24]

"The work product privilege is broader than the attorney-client privilege."[25]  The discovery

rules define "work product" as:

> (1) material prepared or mental impressions developed in anticipation of litigation
> or for trial by or for a party or a party's representatives . . . ; or

> (2) a communication made in anticipation of litigation or for trial between a party and
> the party's representatives or among a party's representatives, including the party's
> attorneys [and] consultants.[26]

Certain matters are expressly excluded from the definition of "work product," however, and are not

protected from discovery even if made or prepared in anticipation of litigation or for trial.[27]  The

carve-outs include "information discoverable under Rule 192.3 concerning experts, trial witnesses,

witness statements, and contentions."[28]

"The primary purpose of the work product rule is to shelter the mental processes,

conclusions, and legal theories of the attorney, providing a privileged area within which the lawyer

can analyze and prepare his or her case."[29]  Core work product—work product that contains "the

---

[23] TEX. R. EVID. 503(a)(5), (b)(1).

[24] *Paxton v. City of Dall.*, 509 S.W.3d 247, 250 (Tex. 2017).

[25] *In re Bexar Cty. Crim. Dist. Attorney's Office*, 224 S.W.3d 182, 186 (Tex. 2007) (orig. proceeding).

[26] TEX. R. CIV. P. 192.5(a).

[27] TEX. R. CIV. P. 192.5(c)(1)-(5).

[28] TEX. R. CIV. P. 192.5(c)(1).

[29] *Owens-Corning Fiberglas Corp. v. Caldwell*, 818 S.W.2d 749, 750 (Tex. 1991) (orig. proceeding).

mental impressions, opinions, conclusions, or legal theories" of an attorney or an attorney's representative—is not discoverable.[30]   A trial court may order disclosure of noncore work product—defined as "[a]ny other work product" that is not core work product—only if the requesting party shows substantial need and undue hardship.[31]   In such a case, the trial court may order disclosure even if doing so "incidentally discloses by inference attorney mental processes otherwise protected [as core work product]," but "the court must—insofar as possible—protect against disclosure of the mental impressions, opinions, conclusions, or legal theories not otherwise discoverable."[32]

The party asserting a privilege in opposition to a discovery request "must establish by testimony or affidavit a prima facie case for the privilege," although "[t]he party need produce 'only the minimum quantum of evidence necessary to support a rational inference that the allegation of fact is true.'"[33]  In limited circumstances, "the documents themselves may, standing alone, constitute

---

[30] TEX. R. CIV. P. 192.5(b)(1).

[31] TEX. R. CIV. P. 192.5(b)(2).

[32] TEX. R. CIV. P. 192.5(b)(3), (4).

[33] *In re Mem'l Hermann Hosp. Sys.*, 464 S.W.3d 686, 698 (Tex. 2015) (orig. proceeding) (internal quotations removed) (quoting *In re E.I. DuPont de Nemours & Co.*, 136 S.W.3d 218, 223 (Tex. 2004) (orig. proceeding)); *see* TEX. R. CIV. P. 193.4.

sufficient proof" to establish a claimed privilege.[34]  Additionally, we have held that "evidence may

not always be necessary to support a claim of protection from discovery."[35]

### 2. The Requested Documents, Collectively, Are Work Product

We have described the work-product privilege as encompassing "two related but different

concepts":

> First, the privilege protects the attorney's thought process, which includes strategy
> decisions and issue formulation. . . .  Second, the privilege protects the mechanical
> compilation of information to the extent such compilation reveals the attorney's
> thought processes.[36]

Billing records constitute "communication[s] made in anticipation of litigation or for trial between

a party and the party's representatives or among a party's representatives."[37]  Moreover, as a whole,

billing records represent the mechanical compilation of information that reveals counsel's legal

strategy and thought processes, at least incidentally.

Conceptually, the matter is similar to the issue we considered in *National Union Fire*

*Insurance Co. v. Valdez*, which involved a discovery request for an attorney's entire litigation file.[38]

We observed that "[t]he organization of the file, as well as the decision as to what to include in it,

necessarily reveals the attorney's thought processes concerning the prosecution or defense of the

case" and that, if such information were discoverable, an attorney would "be restricted in the

---

[34] *State v. Lowry*, 802 S.W.2d 669, 671 (Tex. 1991) (orig. proceeding).

[35] *In re Union Pac. Res. Co.*, 22 S.W.3d 338, 341 (Tex. 1999) (orig. proceeding).

[36] *Occidental Chem. Corp. v. Banales*, 907 S.W.2d 488, 490 (Tex. 1995) (orig. proceeding).

[37] TEX. R. CIV. P. 192.5(a)(2).

[38] 863 S.W.2d 458, 460-61 (Tex. 1993) (orig. proceeding).

organization and maintenance of his or her files by the prospect that they might have to be revealed in their entirety."[39] We thus held (1) an attorney's litigation file goes to the heart of the work-product privilege, (2) "an attorney's selection and ordering of documents in anticipation of litigation is protected work product even where the individual documents are not privileged," and (3) a party is therefore prevented "from requesting the entire file, which is almost certain to encompass numerous irrelevant and immaterial documents . . . as well as privileged information."[40]

A request for all billing invoices, payment logs, payment ledgers, payment summaries, documents showing flat rates, and audits is analogous to the request in *Valdez* for an attorney's entire litigation file. These billing records—which are generated in anticipation of litigation and trial—are "almost certain to encompass numerous irrelevant and immaterial documents."[41] When a party neither seeks to recover its own attorney fees nor attempts to use its attorney-billing records to challenge the opposing party's attorney fees, the party's attorney should not be restricted in the preparation or presentment of his or her billing records by the prospect that they might have to be revealed in their entirety. Further, these billing records, which are useful to the requesting party only if they describe what the attorney has done in the case, reveal the attorney's thought processes concerning the prosecution or defense of the case.

For example, billing records reveal when and where attorneys strategically deploy a client's resources; which issues were addressed by experienced lawyers as compared to less experienced

---

[39] *Id.* at 460.

[40] *Id.* at 460-61; *see also Banales*, 907 S.W.2d at 490.

[41] *Valdez*, 863 S.W.2d at 461.

13

counsel; the subject-matter expertise of an attorney working on a particular aspect of the case; and who was hired as consultants—including consulting experts and jury consultants—and when. This information provides detailed information regarding a party's litigation decisions and also illuminates the relative significance of or concern about particular matters. Especially when a party is a repeat litigant, as the insurer is here, decisions revealed through billing records represent strategic choices and are pieces of "an overall legal strategy for all the cases in which it is involved," which a party must be allowed to develop without intrusion.[42] Discovery of billing records in their entirety would provide a roadmap of how the insurer plans to litigate not only this particular case but also other MDL cases.

The homeowners argue that redaction of privileged material, which the trial court allowed in this case, should be sufficient to protect any privileged information. However, in *Valdez*, we held the attorney's entire litigation file is privileged per se, regardless of whether unprivileged information is included in the file.[43] We conclude that *Valdez*'s core analysis applies here as well and logically applies even if privileged information within the requested records is redacted.

We also conclude that redacting privileged information—such as the specific topics researched or the descriptions of the subject of phone calls—would be insufficient as a matter of law to mask the attorney's thought processes and strategies. The chronological nature of billing records

---

[42] *Owens-Corning Fiberglas Corp. v. Caldwell*, 818 S.W.2d 749, 751 (Tex. 1991) (orig. proceeding).

[43] *See* 863 S.W.2d at 460 ("[E]ven if some of the documents in the law firm files would not otherwise be privileged, production of an attorney's entire file necessarily reveals the attorney's mental processes."); *see also Lewis v. Wittig*, 877 S.W.2d 52, 57 (Tex. App.—Houston [14th Dist.] 1994, orig. proceeding) ("An attorney's 'entire file' is work-product privileged *per se*, subject to waiver through offensive use. This, we believe, is the central holding of *Valdez*.").

14

reveals when, how, and what resources were deployed. With this knowledge, a party in the same proceeding could deduce litigation strategy as to specific or global matters.

Aggregate fee summaries also reveal strategic choices. When litigation is pending, the discovery rules impose a duty to amend or supplement discovery throughout litigation.[44] A dramatic increase in mid-litigation spending could imply an upcoming filing or significant research expenditures related to elevated concerns over recent litigation events.[45] For these reasons, redaction would be inadequate to protect the work-product nature of the total billing information.

Further, objections and disputes regarding what should be redacted based on privilege would lead to collateral litigation over attorney-fee claims, with the issues likely to recur throughout the litigation as discovery is amended or supplemented. As the United States Supreme Court admonished in *Hensley v. Eckerhart*, "[a] request for attorney's fees should not result in a second major litigation."[46]

We therefore hold that requests for production of all billing invoices, payment logs, payment ledgers, payment summaries, documents showing flat rates, and audits invade the zone of work-product protection. Our holding does not prevent a more narrowly tailored request for

---

[44] TEX. R. CIV. P. 193.5.

[45] *See L.A. Cty. Bd. of Supervisors v. Super. Ct.*, 386 P.3d 773, 781 (Cal. 2016) ("When a legal matter remains pending and active, the privilege encompasses everything in an invoice, including the amount of aggregate fees. This is because, even though the amount of money paid for legal services is generally not privileged, an invoice that shows a sudden uptick in spending 'might very well reveal much of [a government agency]'s investigative efforts and trial strategy.' Midlitigation swings in spending, for example, could reveal an impending filing or outsized concern about a recent event." (quoting *Mitchell v. Super. Ct.*, 691 P.2d 642, 646 (Cal. 1984))).

[46] 461 U.S. 424, 437 (1983); *see also Costa v. Sears Home Improvement Prods., Inc.*, 178 F. Supp. 3d 108, 114 (W.D.N.Y. 2016) (concluding that requiring production of defendants' billing records to support the reasonableness of plaintiff's attorney-fee request would increase expenses, lead to various privilege objections, and result in a second major litigation that courts should endeavor to avoid).

15

information relevant to an issue in a pending case that does not invade the attorney's strategic decisions or thought processes.[47] Nor does our holding preclude a party from seeking noncore work product "upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the material by other means."[48] But, here, the record bears no evidence of either.

We acknowledge that an opposing party may waive its work-product privilege through offensive use—perhaps by relying on its billing records to contest the reasonableness of opposing counsel's attorney fees or to recover its own attorney fees.[49] But in this case, the insurer has stipulated it will not use its own billing records to contest the homeowners' attorney fees. Nor is the insurer seeking to recover its own attorney fees from the homeowners. Although the court of appeals indicated the insurer could seek attorney fees in the future based on a Rule 167 settlement offer,[50] the offer-of-settlement rule provides a process for reopening discovery to enable a party to ascertain the reasonableness of the requested costs.[51]

---

[47] *Cf. Valdez*, 863 S.W.2d at 461 ("Our decision today does not prevent a party from requesting specific documents or categories of documents relevant to issues in a pending case, even though some or all of the documents may be contained in an attorney's files. It does, however, prevent a party from requesting the entire file.").

[48] TEX. R. CIV. P. 192.5(b)(2).

[49] *See Valdez*, 863 S.W.2d at 461-62; *see also Republic Ins. Co. v. Davis*, 856 S.W.2d 158, 164 (Tex. 1993) (orig. proceeding) (holding a party may waive the attorney-client privilege through offensive use); *Owens-Corning Fiberglas Corp. v. Caldwell*, 818 S.W.2d 749, 752 (Tex. 1991) (orig. proceeding) (observing a party may waive the work-product privilege through offensive use).

[50] 2015 WL 4380929, at *3, ___ S.W.3d ___, ___ (Tex. App.—Corpus Christi 2015).

[51] TEX. R. CIV. P. 167.5(b).

In describing billing records as work product when requested en masse, we do not foreclose the possibility that some or all of the information may also be protected from compelled disclosure by the attorney-client privilege.[52] But to be protected by the attorney-client privilege, the insurer must establish that the communications were confidential and made to facilitate the rendition of professional legal services to the client. The insurer failed, however, to "establish [a prima facie case for the privilege] by testimony or affidavit" or even by "only the minimum quantum of evidence necessary to support a rational inference that the allegation of fact is true."[53]

## C. Relevance

Although we conclude the requested documents are protected by the work-product privilege, factual information is not exempt from discovery by mere inclusion within protected documents.[54] Accordingly, we must also consider whether interrogatories that request hourly rates, total amount billed, and total reimbursable expenses seek discoverable information. Though the parties disagree about whether the requested factual information is privileged, even unprivileged information is not discoverable unless the information is relevant.

---

[52] *See, e.g.*, *L.A. Cty. Bd. of Supervisors v. Super. Ct.*, 386 P.3d 773, 781 (Cal. 2016) (holding that "[w]hen a legal matter remains pending and active, the [attorney-client] privilege encompasses everything in an [attorney's] invoice, including the amount of aggregate fees"). *But see Paton v. GEICO Gen. Ins. Co.*, 190 So. 3d 1047, 1052 (Fla. 2016) (holding that "the entirety of the billing records are not privileged, and where the trial court specifically states that any privileged information may be redacted, the plaintiff should not be required to make an additional special showing to obtain the remaining relevant, non-privileged information").

[53] *In re Mem'l Hermann Hosp. Sys.*, 464 S.W.3d 686, 698 (Tex. 2015) (orig. proceeding) (citing *In re Living Ctrs. of Tex.*, 175 S.W.3d 253, 261 (Tex. 2005) (orig. proceeding), and *State v. Lowry*, 802 S.W.2d 669, 671 (Tex. 1991) (orig. proceeding), and quoting *In re E.I. DuPont de Nemours & Co.*, 136 S.W.3d 218, 223 (Tex. 2004) (orig. proceeding)); *see also* TEX. R. CIV. P. 193.4.

[54] *Cf. Valdez*, 863 S.W.2d at 460 (noting a document is not privileged simply because it is contained in an attorney's files); *Owens-Corning*, 818 S.W.2d at 750 n.2 ("While an attorney must be allowed to work with a degree of privacy, the protection granted under the work product doctrine does not extend to facts the attorney may acquire.").

We hold the requested information is generally not relevant because (1) the opposing party may freely choose to spend more or less time or money than would be "reasonable" in comparison to the requesting party; (2) comparisons between the hourly rates and fee expenditures of opposing parties are inapt, as differing motivations of plaintiffs and defendants impact the time and labor spent, hourly rate charged, and skill required; (3) "the tasks and roles of counsel on opposite sides of a case vary fundamentally," so even in the same case, the legal services rendered to opposing parties are not fairly characterized as "similar";[55] and (4) a single law firm's fees and hourly rates do not determine the "customary" range of fees in a given locality for similar services. However, when a party uses its "own hours and rates as yardsticks by which to assess the reasonableness of those sought by [the requesting party]" or seeks to shift responsibility for those expenditures, the party places its own attorney-billing information at issue, making the information discoverable.[56]

## 1. Scope of Discovery

The scope of discovery extends to any unprivileged information that is "relevant to the subject matter" of the pending action, even if inadmissible at trial, so long as the information sought "appears reasonably calculated to lead to the discovery of admissible evidence."[57] We broadly construe the phrase "relevant to the subject matter" to provide litigants the opportunity "to obtain

---

[55] *McClain v. Lufkin Indus., Inc.*, 649 F.3d 374, 384 (5th Cir. 2011).

[56] *Mendez v. Radec Corp.*, 818 F. Supp. 2d 667, 669 (W.D.N.Y. 2011).

[57] TEX. R. CIV. P. 192.3(a).

18

the fullest knowledge of the facts and issues prior to trial."[58]  Evidence is relevant if "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action."[59]  Although the scope of discovery is broad, a request for information "must show a reasonable expectation of obtaining information that will aid the dispute's resolution."[60]

The discovery guideposts can be summarized as follows:  only relevant evidence is discoverable; relevant evidence that is privileged is not discoverable; relevant evidence that is not privileged is discoverable when (i) it is admissible or (ii) it is inadmissible but reasonably calculated to lead to the discovery of admissible evidence; and failing either of those admissibility criteria, the request for discovery may be denied even if the requested information is relevant and unprivileged.

We turn now to the pertinent inquiry:  whether information about opposing counsel's hourly rates, total fees, and total reimbursable expenses is relevant and reasonably calculated to lead to the discovery of admissible evidence even when those expenditures are not independently at issue in the litigation, as is the case here.

---

[58] *Ford Motor Co. v. Castillo*, 279 S.W.3d 656, 664 (Tex. 2009) (quoting *Axelson, Inc. v. McIlhany*, 798 S.W.2d 550, 553 (Tex. 1990) (orig. proceeding)); *see also In re Nat'l Lloyds Ins. Co.*, 449 S.W.3d 486, 488 (Tex. 2014) (orig. proceeding).

[59] TEX. R. EVID. 401.

[60] *In re CSX Corp.*, 124 S.W.3d 149, 152 (Tex. 2003) (orig. proceeding).

## 2. Establishing Reasonable and Necessary Attorney Fees

We begin by considering the issue to which the requested information is purportedly relevant—the homeowners' claim for reimbursement of reasonable and necessary attorney fees.

"Texas follows the American rule on attorney's fees, which provides that, generally, 'a party may not recover attorney's fees unless authorized by statute or contract.'"[61]  When fee-shifting is authorized, the party seeking to recover those fees bears the burden of establishing the fees are reasonable and necessary.[62]  This inquiry requires consideration of eight nonexclusive factors articulated in *Arthur Andersen & Co. v. Perry Equipment Corp.*:

1.  the time and labor required, the novelty and difficulty of the questions involved, and the skill required to perform the legal service properly;

2.  the likelihood . . . acceptance of the particular employment will preclude other employment by the lawyer;

3.  the fee customarily charged in the locality for similar legal services;

4.  the amount involved and the results obtained;

5.  the time limitations imposed by the client or by the circumstances;

6.  the nature and length of the professional relationship with the client;

7.  the experience, reputation, and ability of the lawyer or lawyers performing the services; and

---

[61] *Wheelabrator Air Pollution Control, Inc. v. City of San Antonio*, 489 S.W.3d 448, 453 n.4 (Tex. 2016) (quoting *Wells Fargo Bank NA v. Murphy*, 458 S.W.3d 912, 915 (Tex. 2015)).

[62] *See In re Bent*, 487 S.W.3d 170, 184 (Tex. 2016) (orig. proceeding); *Stewart Title Guar. Co. v. Sterling*, 822 S.W.2d 1, 10 (Tex. 1991).

8.      whether the fee is fixed or contingent on results obtained or uncertainty of collection before the legal services have been rendered.[63]

The homeowners cite the first and third *Arthur Andersen* factors as establishing the trial court's discretion to authorize discovery concerning the insurer's attorney-fee expenditures. The homeowners neither address the other enumerated factors nor identify any nonenumerated factor affecting the analysis in this case. But relying on the concurring opinion in *El Apple I, Ltd. v. Olivas*, the homeowners assert that a comparison of their own fees to the insurer's fees is relevant to discharging their burden of proof and is, in fact, a "surer indicator[]" of a reasonable fee.[64]

The insurer argues no *Arthur Andersen* factor is textually or practically directed to an opposing party's attorney fees because the fee-recovery analysis focuses solely on the reasonableness and necessity of the *claimant's* attorney fees. The insurer characterizes the *El Apple* concurrence as involving a party's election to use its own fees as a comparator and not as insinuating an opposing party's attorney-billing information is inherently relevant.

### 3. The Requested Information Is Not Relevant

Considering where the evidentiary burden lies with respect to a fee-shifting request and the focus of the material inquiry, we hold that an opposing party's hourly rates, total amount billed, and total reimbursable expenses do not, in and of themselves, make it any more probable that a requesting party's attorney fees are reasonable and necessary, or not, which are the only facts "of

---

[63] 945 S.W.2d 812, 818 (Tex. 1997) (citing TEX. DISCIPLINARY RULES PROF'L CONDUCT 1.04(b), *reprinted in* TEX. GOV'T CODE tit. 2, subtit. G, app. A); *see El Apple I, Ltd. v. Olivas*, 370 S.W.3d 757, 761 (Tex. 2012) (the *Arthur Andersen* factors are not exclusive) (citing TEX. DISCIPLINARY RULES PROF'L CONDUCT 1.04(b), *reprinted in* TEX. GOV'T CODE tit. 2, subtit. G, app. A).

[64] *See El Apple I*, 370 S.W.3d at 766 (HECHT, J., concurring).

consequence."[65]  This is so because an opposing party's litigation expenditures are not *ipso facto*

reasonable or necessary; indeed parties who are not seeking to shift responsibility for their fees may

freely choose to spend more or less time or money than would be "reasonable" or "necessary" for

parties who are.[66]

> Despite superficial appeal, such "an apples-to-oranges comparison" is analytically faulty:
>
> The most obvious flaw . . . is that making such a comparison—where the benchmark
> for the award of plaintiff's attorney fees is "reasonableness"—would require the trial
> court to first determine whether the defendant's counsel billed a reasonable amount.
> Such a scheme does not make sense.[67]

In order for an opposing party's fees to serve as a relevant measure to any legitimate degree, the

claimant would first have to establish those fees are themselves reasonable and necessary.  Doing

so necessitates consideration of other data points beyond the instant parties' expenditures.  Because

other evidence would be required to make an opposing party's fees relevant in the first instance,

discovery concerning an opposing party's attorney-fee expenditures serves no purpose besides

unnecessarily complicating the litigation in pursuit of a collateral matter.  Evidence of an opposing

party's fees lacks genuine probative value as a comparator for a requesting party's fees and, at best,

would be merely cumulative or duplicative of other evidence directed to that inquiry.[68]  Concisely

---

[65] *See* TEX. R. EVID. 401.

[66] However, a lawyer is constrained from entering into an arrangement for "an illegal fee or unconscionable fee," which is defined as "if a competent lawyer could not form a reasonable belief that the fee is reasonable."  TEX. DISCIPLINARY RULES PROF'L CONDUCT 1.04(a), *reprinted in* TEX. GOV'T CODE tit. 2, subtit. G, app. A.

[67] *Burks v. Siemens Energy & Automation, Inc.*, 215 F.3d 880, 884 (8th Cir. 2000).

[68] *See* TEX. R. CIV. P. 192.4(a).

stated, two wrongs don't make a right, and proving two rights is unnecessary when the only fact of consequence is whether one is right.

This conclusion accords with both a literal and practical reading of the first and third *Arthur Andersen* factors, which the homeowners cite as supporting the trial court's discovery order. With regard to the first factor—which considers the time, labor, and skill required and the novelty and difficulty of the questions involved—there can be little dispute that different motivations and different demands drive the time and labor spent, hourly rate charged, and skill required to defend litigation as compared to prosecuting a suit.[69] As to the third *Arthur Andersen* factor—the fee customarily charged in the locality for similar legal services—opposing parties are not providing "similar legal services" even in the same case, and the term "customarily" connotes a composite of fee information for the area rather than a single data point. Fundamentally, the tasks and roles of counsel on opposite sides of a case and the interests of opposing parties are so distinct that no "logical comparability" exists with respect to their attorney fees and billing rates.[70]

For example, a party subject to repeat litigation, such as an insurer or corporate defendant, may view the precedential value of a case more significantly than an opposing party who might not anticipate ever being involved in similar litigation again. Likewise, one side may have more at risk

---

[69] *See, e.g.*, *Mirabal v. Gen. Motors Acceptance Corp.*, 576 F.2d 729, 731 (7th Cir. 1978).

[70] *McClain v. Lufkin Indus., Inc.*, 649 F.3d 374, 384 (5th Cir. 2011) (criticizing district court for allowing discovery of defense counsel's fees because "[n]o prior Fifth Circuit authority requires this comparison, nor does common experience" given the fundamentally different roles of opposing counsel, and that if "there were logical comparability, this court's decisions would have recognized it in the *Johnson* factors [which are similar to Texas's *Arthur Andersen* factors] or in past lodestar decisions").

23

in a case.[71]  Such considerations could reasonably justify greater expenditures in time, labor, and money than might be considered "reasonable" from the other party's perspective.[72]  As the expression goes, one side of the litigation may have more skin in the game than the other.

Similarly, the nature of the attorney-client relationship may differ in ways that affect the rates charged and the demands on counsel's time.  In that vein, ongoing attorney-client relationships often exist between corporate and governmental parties and their counsel and frequently involve negotiated rates that take into consideration future litigation work.[73]  And "[l]arger organizations, often armed with more resources to expend on litigation than individuals, are frequently more demanding on their counsel in requesting constant updates on the litigation and detailed summaries on recent rulings, thereby requiring more time by their attorneys."[74]  These considerations are especially pertinent in multi-party litigation, like the MDL proceedings here.

Even when working on the same tasks, attorneys litigating the same case do not approach those tasks in a sufficiently comparable manner to be genuinely probative of the degree of effort or skill required by one another.  Indeed, while counsel for both sides may attend the same deposition,

---

[71] *Cf. Ohio-Sealy Mattress Mfg. Co. v. Sealy Inc.*, 776 F.2d 646, 659 (7th Cir. 1985) ("We would normally expect a defendant to invest more in defending an antitrust suit than a plaintiff would invest in prosecuting it.  After all, if a defendant loses, it must pay treble damages, the cost of defending, and the plaintiff's reasonable costs of bringing the suit; if the plaintiff loses, it is out only costs and whatever fees it paid its attorneys.").

[72] *See Johnson v. Univ. Coll. of the Univ. of Ala. in Birmingham*, 706 F.2d 1205, 1208 (11th Cir. 1983) (hours needed by one side to prepare may differ substantially from that of opposing counsel, since the nature of the work may vary dramatically and the case may have far greater precedential value to one side than the other).

[73] *Souryavong v. Lackawanna Cty.*, 159 F. Supp. 3d 514, 544 (M.D. Pa. 2016) (noting a defense counsel's time and billing records are not helpful in assessing reasonableness and that this is "particularly true here where defense counsel represents a large governmental organization and Plaintiffs' counsel represents three (3) non-corporate individuals").

[74] *Id.* (citing *Samuel v. Univ. of Pittsburgh*, 80 F.R.D. 293, 295 (W.D. Penn. 1978)).

the attorney taking the deposition would reasonably be expected to expend more time and expense in preparing for the deposition than the attorney defending the deponent. In like manner, the contrast between responding to discovery requests and reviewing and analyzing information produced creates significant variations in time and money spent. Suffice it to say that counsel in the same case are not actually or even effectively performing "similar legal services" for the litigation.

Even if they were performing roughly the same legal services, a single law firm's fees and hourly rates in a particular case do not equate to a "customar[y]" fee for similar legal services:

> [W]hat a single law firm charges for a particular set of services and its choice of tactics in representing a given client are issues decidedly distinct from deciding what constitutes a customary fee. The [customary-fee] factor is plainly aimed at a *composite* of legal fees charged for a given service. Thus, focusing on one law firm's billing practices is unhelpful in determining what is "customary." The thrust of this lawsuit is whether [plaintiff's] fees, not those generated by [defendant], fall within the range of reason.[75]

Explaining the distinction, one court observed: "The particular rates charged by defendants' attorneys in this action reflect only the rates charged in one specific case by one specific law firm but do not have a bearing on the general hourly rate normally charged for similar legal work in the area."[76]

---

[75] *Duininck Bros. v. Howe Precast, Inc.*, No. 4:06-CV-441, 2008 WL 4411641, at *3 (E.D. Tex. Sept. 23, 2008) (emphasis added).

[76] *Blowers v. Lawyers Coop. Publ'g Co.*, 526 F. Supp. 1324, 1328 (W.D.N.Y. 1981) ("The hourly rates charged to defendants by their attorneys in this particular case is simply not relevant in determining the prevailing hourly rate in the area. Plaintiff has not requested general information concerning the normal rates charged by defendants' attorneys in similar cases, but has particularized her Interrogatories.").

The fact that the insurer challenges the homeowners' attorney fees as excessive does not, in and of itself, alter the analysis.[77] A party can challenge another party's fee request as not "customary" even though that party also paid a fee that was not "customary," as long as the challenger does not rely on its own fees to prove the point.[78]

The homeowners cite several state and federal decisions for the proposition that an opposing party's attorney-billing information is at least minimally relevant and therefore the trial court has complete discretion to order discovery of such information or not.[79] While there is authority that may be construed as supporting the homeowners' discovery efforts, the jurisprudence reflects a wide variety of approaches to this issue among state and federal courts.[80] For the reasons explained above, we agree with those cases concluding such information is generally not discoverable and, in the ordinary case, "patently irrelevant."[81]

---

[77] In arguing the contrary, the homeowners cite, among other cases, *Mendez v. Radec Corp.*, 818 F. Supp. 2d 667, 668-69 (W.D.N.Y. 2011) ("Where the opposing party challenges the reasonableness of the rate or hours charged by the moving party's counsel, courts are more likely to find that evidence of the nonmoving party's counsel's fees are relevant and discoverable.").

[78] *See id.* at 669 (finding defense counsel's billing records relevant and discoverable because defense counsel objected to the fee request as excessive and "used their own hours and rates as yardsticks by which to assess the reasonableness of those sought by plaintiffs").

[79] *See, e.g.*, *Paton v. GEICO Gen. Ins. Co.*, 190 So. 3d 1047, 1052 (Fla. 2016); *Ex parte Vulcan Materials Co.*, 992 So. 2d 1252, 1268 (Ala. 2008); *see also Naismith v. Prof'l Golfers Ass'n*, 85 F.R.D. 552, 562-64 (N.D. Ga. 1979).

[80] *See, e.g.*, *Montgomery v. Kraft Foods Glob., Inc.*, No. 1:12-CV-00149, 2015 WL 881585, at *2-3 (W.D. Mich. Mar. 2, 2015) (collecting contrasting authorities); *Marks Constr. Co. v. Huntington Nat'l Bank*, Civil Action No. 1:05CV73, 2010 WL 1836785, at *2-5 (N.D. W. Va. May 5, 2010) (same); *Cohen v. Brown Univ.*, CA 92-197 L, 1999 WL 695235, at *2 (D.R.I. May 19, 1999) (same).

[81] *See, e.g.*, *In re Tex. Mut. Ins. Co.*, 358 S.W.3d 869, 872 (Tex. App.—Dallas 2012, orig. proceeding); *In re AIG Aviation (Tex.), Inc.*, No. 04-04-00291-CV, 2004 WL 1166560, at *1 (Tex. App.—San Antonio May 26, 2004, orig. proceeding) (mem. op.); *MCI Telecomms. Corp. v. Crowley*, 899 S.W.2d 399, 403 (Tex. App.—Fort Worth 1995, orig. proceeding).

Even if a party's attorney-billing information were marginally relevant to an opposing party's fee claim, discovery of such information should ordinarily be denied because the "probative value is substantially outweighed by the danger of . . . unfair prejudice, confusion of the issues, misleading the jury, undue delay, or needlessly presenting cumulative evidence."[82] When requested information would manifestly foment these concerns and the probative value of the requested information is minimal, the discovery request is not "reasonably calculated to lead to the discovery of admissible evidence."[83]

What's more, barring unusual circumstances, evidence about an opposing party's attorney fees is not necessary for the requesting party to meet its burden of proof, but there is a genuine threat that allowing such discovery would give rise to abusive discovery practices. "Discovery is often the most significant cost of litigation" and a potential "weapon capable of imposing large and unjustifiable costs on one's adversary."[84] Especially in the context of multi-party litigation, costs are magnified by expanding the scope of discovery, and "the costs of multi-party litigation can drive defendants to settle regardless of the merits."[85] While litigants should have the opportunity "to

---

[82] TEX. R. EVID. 403.

[83] TEX. R. CIV. P. 192.3(a).

[84] *In re Alford Chevrolet-Geo*, 997 S.W.2d 173, 180 (Tex. 1999) (orig. proceeding) (citing Wayne D. Brazil, *Views From the Front Lines: Observations by Chicago Lawyers About the System of Civil Discovery*, 1980 AM. B. FOUND. RES. J. 219, 229, and Frank H. Easterbrook, *Discovery as Abuse*, 69 B.U. L. REV. 635, 636 (1989)).

[85] *Id.* (citing *CSR, Ltd. v. Link*, 925 S.W.2d 591, 598 (Tex. 1996) (orig. proceeding) (GONZALEZ, J., concurring)).

obtain the fullest knowledge of the facts and issues prior to trial,"[86] our rules also protect against unnecessary burgeoning of litigation costs.

In sum, barring unusual circumstances, an opposing party's attorney-fee information is not relevant because there is no reasonable expectation that the information will aid the dispute's resolution. Moreover, whatever marginal relevance might theoretically exist would not come close to surpassing competing concerns about undue prejudice, confusion of the issues, and abusive discovery practices, among others. Aside from lacking genuine probative value, discovery of an opposing party's attorney-billing information should generally not be permitted for these additional reasons.

### D. Expert Discovery

Attorney-billing information may be discoverable by virtue of the opposing party designating its counsel as a testifying expert. Per Rule 192.3, a party is entitled to expert discovery of facts known by the testifying expert relating to the expert's mental impressions and opinions formed, any bias of the expert witness, and documents provided to or reviewed by the expert in anticipation of testimony.[87] Additionally, the work-product privilege does not apply to "information discoverable under Rule 192.3 concerning experts, trial witnesses, witness statements, and contentions."[88] Thus, the tactical decision to designate counsel as a testifying witness provides the opposing party with the

---

[86] *Ford Motor Co. v. Castillo*, 279 S.W.3d 656, 664 (Tex. 2009) (quoting *Axelson, Inc. v. McIlhany*, 798 S.W.2d 550, 553 (Tex. 1990) (orig. proceeding)).

[87] TEX. R. CIV. P. 192.3(e)(3)-(6).

[88] TEX. R. CIV. P. 192.5(c)(1).

means to access information and attorney work product not otherwise available under the general scope of discovery.[89]

In those circumstances, however, the requesting party must follow the discovery rules applicable to testifying experts. Importantly, a party is limited in the tools available to discover information concerning expert witnesses, even though the information may otherwise be within the scope of testifying-expert discovery. "Rule 192.3(e) sets forth the *scope* of information that parties may discover about a testifying expert . . . . Rule 195 addresses the *methods* for obtaining such information, limiting testifying-expert discovery to that acquired through disclosures, expert reports, and oral depositions of expert witnesses."[90] To minimize undue expense and curb discovery abuse,[91] Rule 195 does not provide for interrogatories or requests for production like the discovery requests at issue here.[92] Further, because the disputed discovery requests are not permissible methods of

---

[89] If a party is concerned about the discovery of its privileged information through expert discovery, the party may designate another expert in the first place or, presumably, withdraw a currently designated expert and name another. *See In re Christus Spohn Hosp. Kleberg*, 222 S.W.3d 434, 445 (Tex. 2007) (orig. proceeding).

[90] *In re Ford Motor Co.*, 427 S.W.3d 396, 397 (Tex. 2014) (orig. proceeding) (emphases added).

[91] We observed in *In re Ford Motor Co.* that:

> The official comments to Rule 195 articulate a goal of minimizing "undue expense" in conducting expert discovery. This goal comports with efforts by this Court and others to curb discovery abuse through the implementation of carefully crafted principles and procedures. We have expressed concerns about allowing overly expansive discovery about testifying experts that can permit witnesses to be subjected to harassment and might well discourage reputable experts from participating in the litigation process.

*Id.* (citations and internal quotations omitted).

[92] *See* TEX. R. CIV. P. 195.1 ("A party may request another party to designate and disclose information concerning testifying expert witnesses *only* through a request for disclosure under Rule 194 and through depositions and reports as permitted by this rule." (emphasis added)). Via requests for disclosure, as authorized by Rule 195.1, a party is entitled to limited expert-witness document discovery, including "all documents, tangible things, reports, models, or data compilations that have been provided to, reviewed by, or prepared by or for the expert in anticipation of the expert's

29

obtaining information discoverable under Rule 192.3(e), the exception to the work-product privilege in Rule 192.5(c)(1) does not apply.[93]

While the distinctions may seem like a technicality, the limitations on expert discovery ensure discovery is narrowly tailored to permissible purposes. In this case, for example, the requested discovery seeks all billing information without any showing that those records "have been provided to, reviewed by, or prepared by or for the expert in anticipation of the expert's testimony."[94] By asserting the requested discovery is proper based on counsel's designation as an expert witness, the homeowners circumvent the requirement that there be at least some nexus between the expert and the requested information. While counsel surely has reviewed his own bills and is knowledgeable about his own billing practices, he has not necessarily reviewed the billing information of other attorneys representing the insurer in the MDL cases.[95]

Because the homeowners chose not to use Rule 195's permissible discovery methods to request insurer's expert information, the trial court erred insofar as it relied on Rule 192.3(e) in determining the scope of discovery. Additionally, the Rule 192.5(c)(1) work-product exception does

---

testimony." TEX. R. CIV. P. 194.2(f)(4); *see also* TEX. R. CIV. P. 192.3(e) (delineating the scope of expert discovery), 195.5 ("In addition to disclosure under Rule 194, a party may obtain discovery concerning the subject matter on which the expert is expected to testify . . . and other discoverable matters, including documents not produced in disclosure, only by oral deposition of the expert and by a report prepared by the expert under this rule.").

[93] TEX. R. CIV. P. 192.5(c)(1) (excepting from work-product protection "information discoverable under Rule 192.3 concerning experts, trial witnesses, witness statements, and contentions").

[94] TEX. R. CIV. P. 194.2(f)(4).

[95] The record illustrates the point with counsel's testimony in the *Amaro* case, which the homeowners rely on as the impetus for the disputed discovery: "I can give you the range of what my firm has billed. What I cannot give you today are the fees incurred and the amount that [co-counsel] has billed on it."

not apply to requested information under these particular discovery methods and thus the trial court's discovery order improperly compels discovery of work-product privileged information.

### E. Response to Dissent

"The line between who is a Rule 702 expert witness and who is a Rule 701 [fact] witness is not always bright."[96]  But when a witness is properly disclosed and designated as an expert and the main substance of the witness's testimony is based on specialized knowledge, skill, experience, training, and education, "the testimony will generally be expert testimony within the scope of Rule 702."[97]  Here, the insurer (1) challenged the reasonableness and necessity of the homeowners' attorney fees, but has not requested its own fees; (2) stipulated that it will not use its own billing information to contest the homeowners' attorney fees; (3) designated one of its attorneys as an expert based upon his experience, education, and skill; and (4) stated that counsel "is expected to testify as to reasonable and necessary attorney fees for a case of such complexity as this case, pending in Hidalgo County, Texas."

The dissent's analysis conflates the role of an expert with the role of a fact witness and ignores the distinction between the discovery rules associated with those respective roles.  We do not disagree with the dissent that the insurer's counsel can be cross-examined at trial in his role as an expert witness; consequently, discovery as to his credibility, biases, and facts relating to or forming the basis of his mental impressions and opinions is permitted under the expert-discovery

---

[96] *Reid Rd. Mun. Util. Dist. No. 2 v. Speedy Stop Food Stores, Ltd.*, 337 S.W.3d 846, 850-52 (Tex. 2011).

[97] *Id.* at 851.

31

rules.[98]  But the homeowners did not use permissible methods for obtaining expert discovery.[99]  The discovery methods matter; we require—as our rules of civil procedure require—that parties utilize permissible tools for requesting expert discovery.

The dissent also misunderstands our holding regarding the attorney work-product privilege. The dissent agrees that compelling en masse production of a party's billing records invades the work-product privilege but, somewhat confusingly, asserts the privilege is not impinged because the order to produce billing records was limited to the billing records in this case and redaction would be sufficient to protect the privilege.[100]  We confronted a similar situation in *National Union Fire Insurance Co. v. Valdez* and squarely held that production of an attorney's entire case file would reveal an attorney's thought processes and strategies, even if some of the documents in the file would not otherwise be privileged.[101]  We did not provide for redaction then, nor do we conclude redaction would be adequate in this context.  Redaction is simply not sufficient to protect the privilege or mask an attorney's thought processes and strategies whether production of an entire litigation file is at issue or en masse production of attorney billing records is involved.  Thus concerns analogous to those in *Valdez* compel the same conclusion in this case.

---

[98] *See* TEX. R. CIV. P. 192.3(e)(3)-(6).

[99] TEX. R. CIV. P. 195.1 (limiting a party's expert discovery tools to only a request for disclosure and through depositions and reports).

[100] *Post* at ___.

[101] 863 S.W.2d 458, 460-61 (Tex. 1993) (orig. proceeding); *see also supra* notes 38-46 and accompanying text.

Finally, the dissent's preservation argument misses the mark.[102] The insurer's opposition to discovery is two-pronged: (1) the requested information is privileged and irrelevant under the general scope of discovery, and (2) the insurer's designation of its attorney as an expert witness does not change this fact. Whether designation of counsel as an expert alters the discovery analysis—as the homeowners and dissent maintain—is well within the issue presented.

## III. Conclusion

Making a claim for attorney fees or using attorney fees as a comparator in challenging an opponent's fee request puts a party's attorney fees at issue in the litigation. In addition, designating counsel as an expert opens the door to expert-witness discovery as provided and limited by the Texas Rules of Civil Procedure. Outside of these scenarios and absent unusual circumstances, information about an opposing party's attorney fees and expenses is, in the ordinary case, privileged or irrelevant and, thus, not discoverable. Given the circumstances in this case and the nature of the discovery requests at issue, we conditionally grant mandamus relief and direct the trial court to vacate its order compelling National Lloyds Insurance Company, Wardlaw Claims Service, and Ideal Adjusting to answer requests for production 1, 2, 4, and 5, and interrogatories 1, 2, and 3. The writ will issue only if the trial court fails to do so.

_____
Eva M. Guzman
Justice

**OPINION DELIVERED**: June 9, 2017

---

[102] *Post* at ___.