Bert and Doni HUSSEY, Plaintiffs,

v.

STATE FARM LLOYDS INSURANCE COMPANY, Defendant.

No. 3:02–CV–51.

United States District Court,
E.D. Texas,
Paris Division.

Aug. 11, 2003.

Carl Pipoly of Pipoly Law Offices, San Antonio, TX, for Plaintiffs.

David V. Jones of Jones, Kurth, Andrews & Ortiz, San Antonio, TX, for Defendants.

## MEMORANDUM OPINION AND ORDER

DAVIS, District Judge.

Pending before the Court is Defendant State Farm Lloyds Insurance Company's ("State Farm") Motion to Quash Notice of Intention to take Deposition by Written Interrogatories of George Perdue and Motion for Protective Order (Docket No. 30). Having considered the parties' submissions, the applicable law, and the argument of counsel at the July 31, 2003 hearing, the Court finds that Defendant's Motions should be **DENIED.**

### BACKGROUND

This is first party foundation case. State Farm issued the Plaintiffs Bert and Doni Hussey (hereinafter "the Husseys") a homeowner's insurance policy (hereinafter "policy"). The policy covered damage to foundation, floors, walls and ceilings caused by plumbing leaks. In August 2002, while the policy was still in effect, the Husseys reported a claim to State Farm for foundation damage. State Farm investigated the claim and discovered a plumbing leak. State Farm then hired George Perdue & Associates, Inc. ("George Perdue") to determine whether the leak caused damage. George Perdue rendered his opinion that it did not and based on that opinion State Farm denied the Husseys claim for foundation damage.

The Husseys filed the instant lawsuit on May 21, 2003, alleging that State Farm: (1) breached its contract with the Husseys; (2) breached its duty of good faith and fair dealing; (3) violated the Texas Deceptive Trade Practices Act ("DTPA"); (4)engaged in unfair settlement practices in violation of Article 21.21–2 of the Texas Insurance Code; (5) violated Article 21.55, Sec. 2 of the Texas Insurance Code by not promptly paying the claim; and (6) owes them attorney's fees under various statutes.

The instant dispute arose on June 30, 2003, when the Husseys served on State Farm their *Notice of Intention to Take Deposition by Written Interrogatories of George Perdue.*[1] The Notice states: "after fourteen (14)

---

1. On March 20, 2003, State Farm served its Designation of Testifying Experts identifying Perdue and George Perdue & Associates as:

Engineering company retained by Defendant to investigate reported foundation movement in claim number 43–B746–127; has knowledge of their engineering investigation. Please see report in claim file number 43–B746–127. Mr. Perdue's opinions and the basis therefore are contained in his report to State Farm, which was previously provided to Plaintiffs during Defendant's handling of claim number

days from the service of a copy hereof with attached questions, a Deposition by Written Questions will be taken of: George Perdue [of] George Perdue & Associates, Inc." The Notice further provides that: "the Officer authorized to take the deposition shall issue a subpoena *duces tecum* and that Perdue shall produce the documents described in the questions to be propounded to the witness." One of the questions propounded requested: "ANY AND ALL engineering reports prepared by State Farm for the past five years on residential foundation claims where damage was alleged to be caused by a plumbing leak."

State Farm contends that the discovery of an expert witness' records unconnected with the case at hand solely for impeachment purposes is impermissible where the expert's credibility has not been put at issue. State Farm also argue that the discovery sought by the Husseys is unduly burdensome, oppressive, and calculated to cause undue expense. The Husseys assert that the expert reports complected by Perdue for State Farm for the past five years are relevant to determining whether State Farm breached its duty of good faith and fair dealing. The Husseys allege that "State Farm knowingly hired a biased engineering firm to investigate the claim to render an opinion State Farm could use as a pretext to deny the claim and theoretically avoid a charge of bad faith." Pl's Compl. ¶ 7, at 2. Thus, it is imperative that the Court look to the case law for guidance on what is necessary to prove a breach of good faith and fair dealing claim.[2]

## BREACH OF THE DUTY OF GOOD FAITH AND FAIR DEALING

▇ Whether an insurer has breached its duty of good faith and fair dealing is a fact issue. *Universe Life Ins. Co. v. Giles*, 950 S.W.2d 48, 56 (Tex.1997). An insurer breaches its duty of good faith and fair dealing when "the insurer had no reasonable basis for denying or delaying payment of [a] claim, and [the insurer] knew or should have known that fact." *Universe Life Ins. Co. v. Giles*, 950 S.W.2d at 50–51 (quoting *Transportation Ins. Co. v. Moriel*, 879 S.W.2d 10, 18 (Tex.1994)).

*State Farm Lloyds v. Nicolau*, 951 S.W.2d 444, 446 (Tex.1997) provides insight into what is needed to prove a breach of a duty of good faith and fair dealing claim. In 1984, the Nicolau's observed cracks in the wall of their house. *Id.* They hired Michael Krismer ("Krismer"), a foundation repair contractor, to inspect the house. *Id.* They also hired Dextor Bacon ("Bacon"), a structural engineer who concluded that an ongoing drought causes the front part of the house to sink. *Id.* Krismer installed concrete piers for support. *Id.* Again, in 1986, the Nicolau's noticed cracks appearing inside and outside their house. *Id.* In 1988, Krismer and Bacon inspected the house and determined that the piers were providing adequate support. *Id.* Krismer reached the same conclusion in 1989. *Id.* However, he later became alarmed and tested the drainage system for leaks. *Id.* at 447. This test indicated that there was a leak in the plumbing system. *Id.*

The Nicolaus submitted their claim under their homeowner's insurance policy from State Farm Lloyds, which referred the matter to Monty R. Murray ("Murray"), an adjuster with ABJ Adjusters, Inc. ("ABJ"), who expressed doubts that the leak was responsible for the foundation damage. *Id.* Ralph Cooper, State Farm's claims superintendent, authorized ABJ to obtain a report from Haag Engineering Co. ("Haag"). *Id.* The Haag

---

43–B746–127, and which is also contained in the non-privileged portion of Defendant State Farm's claim file number 43–B746–127, which has been previously produced. In addition, Mr. Perdue's opinions and the basis therefore are contained in his file on this investigation, which had been previously produced. Mr. Perdue is expected to testify consistent with his report.
Def's Mot. Quash, at Ex. 1.

**2.** For a detailed history of the law of insurance bad faith in Texas see STEPHEN S. ASHLEY, BAD FAITH

ACTIONS—LIABILITY AND DAMAGES § 5:4A (2d ed.1997) (summarizing *Arnold v. Nat'l County Mut. Fire Ins. Co.*, 725 S.W.2d 165 (Tex.1987); *Aranda v. Ins. Co. of N. Am.*, 748 S.W.2d 210 (Tex.1988); *Lyons v. Millers Cas. Ins. Co.*, 866 S.W.2d 597 (Tex.1993); *Universe Life Ins. Co. v. Giles*, 950 S.W.2d 48 (Tex.1997); *State Farm Lloyds v. Nicolau*, 951 S.W.2d 444, (Tex.1997); *State Farm Fire & Cas. Co. v. Simmons*, 963 S.W.2d 42 (Tex. 1998)).

engineers examined the house and determined that the leak has not significantly affected the foundation. *Id.* Cooper forwarded this report to the Nicolaus together with a letter reserving their right to deny coverage. *Id.* State Farm, after receiving the repair estimate from Krismer, denied most of the Nicolaus' claim. *Id.* The Nicolaus filed a lawsuit after hiring their expert, Chien Fu ("Fu"), who determined the plumbing leak had caused wet conditions in the soil. *Id.* The jury found that State Farm, among others, had breached its duty of good faith and fair dealing. *Id.* This was appealed all the way to the Texas Supreme Court.

The Texas Supreme Court upheld the jury's finding and reasoned that the record before the court contained sufficient evidence to sustain a finding of bad faith under either the "no reasonable basis" standard or under the "reasonably clear" standard. *Id.* at 448.[3] The court also found that "an insurer's reliance on an expert's report, standing alone, will not necessarily shield the carrier [from liability] if there is evidence that the report was not objectively prepared or that the insurer's reliance on the report was unreasonable." *Id.* The court determined that the

Nicolaus "presented evidence form which a fact-finder could logically infer that Haag's reports were not objectively prepared, that State Farm was aware of Haag's lack of objectivity, and that State Farm's reliance on the reports was merely pretextual." *Id.*[4] The court further concluded that the record contained evidence that State Farm and Haag had not conducted an adequate investigation. *Id.* at 449.[5]

■ In the instant case, the Court finds that the expert reports completed by Perdue for State Farm for the past five years dealing with plumbing leaks are relevant to determining whether State Farm breached its duty of good faith and fair dealing.[6] The previous expert reports conducted by Perdue could potentially allow the fact-finder to logically infer that Perdue's reports were not objectively prepared, that State Farm was aware of Perdue's lack of objectivity, and that State Farm's reliance on the reports was merely pretextual. Accordingly, expert reports are discoverable because they are relevant to the general subject matter of this case and are likely to lead to the discovery of admissible evidence. *See* FED.R.CIV.P. 26(b)(1).[7]

---

**3.** For a detailed analysis of evidentiary sufficiency in bad faith suits see generally William T. Barker, *Evidentiary Sufficiency in Insurance Bad Faith Suits*, 6 CONN. INS L.J. 81 (1999–2000); Michael Sean Quin, *Struggle, Confusion, and Diversity: Insurance Bad Faith in Texas Recent Rapid Evolution*, 20 No. 5 INS. LITIG. RPTR. 175 (March 15, 1998).

**4.** The court pointed to evidence that the majority of Haag's work came form insurance companies and that State Farm was aware that before hiring Haag that Haag advocated the view that plumbing leaks are unlikely to cause foundation damage. *Id.* at 448–49. Also, the court quoted the Nicolaus' own attorney, who when testifying about attorney's fees, stated that she occasionally represented State Farm and that she believed that there was a "fair inference" that State Farm's claim superintendent had hired Haag because he knew that Haag, as a general proposition, would find that the leak did not cause foundation damage. *Id.* at 449.

**5.** The court noted that Krismer testified that the Haag report was based on a lack of information and the failure to perform other tests was unreasonable. *Id.* The investigators should have examined the leak and taken soil samples. *Id.*

**6.** State Farm relies on *Russell v. Young*, 452 S.W.2d 434 (Tex.1970) wherein the court had to decide

whether the records of a potential witness in a lawsuit are discoverable prior to trial in instances where the potential witness is not a party to the lawsuit and whose credibility has not been put in issue and where the records do not relate directly to the subject matter of the pending suit and are sought to be discovered for the sole purpose of impeachment of such witness by showing his bias or prejudice.

*Id.* at 435. The court went on to hold that under such circumstances, the records were not discoverable. *Id. Russell* and the case at bar are significantly different. Specifically, the Husseys are not seeking the expert reports for the "sole purpose of impeachment." *Id.* Instead, the Husseys are seeking the expert reports to potentially show that Perdue's reports were not objectively prepared, that State Farm was aware of Perdue's lack of objectivity, and that State Farm's reliance on the reports was merely pretextual, and thus, prove that State Farm breached its duty of good faith and fair dealing.

**7.** Rule 26(b)(1) of the Federal Rules of Civil Procedure provides as follows:

Parties may obtain discovery regarding any matter, not privileged, which is relevant to the

## UNDUE BURDEN

State Farm contends that the production of Perdue's expert reports is unduly burdensome. State Farm relies on a number of the Federal Rules of Civil Procedure in support its agreement: (1) Rule 26(b)(2)(i) and (iii); (2) Rule 26(c); and (3) Rule 45(c). The Court will address each of these rules in turn.

### i. *Federal Rule of Civil Procedure 26(b)(2)(i) and (iii)*

State Farm contends that the information sought by the Husseys goes beyond the limitations found in FED.R.CIV.P. 26(b)(2)(i) and (iii). "All discovery is subject to the limitations imposed by Rule 26(b)(2)(i), (ii) and (iii)." FED.R.CIV.P. 26(b)(2). These limitations are as follows:

> (I) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is *more convenient, less burdensome, or less expensive;*
>
> (iii) *the burden or expense of the proposed discovery outweighs its likely benefit,* taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues.

FED.R.CIV.P. 26(b)(2) (emphasis added).

■ State Farm argues that the Husseys could obtain the information they seek through the deposition of Perdue instead of seeking the information through a Notice of Intention to Take Deposition by Written Questions and *duces tecum.* Thus, State Farm argues that the production of the reports is unduly burdensome, oppressive and calculated to cause undue expense to State Farm and Perdue. "The burden of the proposed discovery further outweighs its likely benefit. Notably, the engineering reports do not provide any information as to what State Farm's claim representative knew at the time that George Perdue and Associate was hired in this case." Def's Motion Quash, at 6.

First, the Court finds that the Husseys cannot obtain the information they seek through the oral deposition of Perdue. The oral answers of Perdue would not be sufficient. Second, the Court finds that State Farm has failed to show that the production of Perdue's expert reports completed for State Farm over the past five years will cause an undue burden. State Farm cannot rely on a conclusory statement that the discovery will cause an undue burden. State Farm has provided no evidence, affidavit or otherwise, that the production of Perdue's expert reports will cause an undue burden. Finally, while it might be true that engineering reports do not provide any information as to what State Farm's claim representative knew at the time that George Perdue and Associates was hired in this case, the engineering reports certainly allow the fact-finder to infer what State Farm's claim representative knew at that time. Thus, the burden of discovery does not outweigh its likely benefit. Accordingly, the Court will not limit the discovery pursuant to FED.R.CIV.P. 26(b)(2)(i) and (iii).

### ii. *Federal Rule of Civil Procedure 26(c)*

■ Federal Rule of Civil Procedure 26(c) authorizes this court "[u]pon motion by a party ... from whom discovery is sought, ... and for good cause shown" to enter a protective order prohibiting or limiting discovery. A party seeking a protective order to prevent or postpone a deposition must show good cause and the specific need for protection. *See Landry v. Air Line Pilots Ass'n,* 901 F.2d 404, 435 (5th Cir.), *cert. denied,* 498 U.S. 895, 111 S.Ct. 244, 112 L.Ed.2d 203 (1990). "Good cause" exists

claim or defense of any party, including the existence, description, nature, custody, condition, and location of any books, documents or other tangible things and the identity and location of persons having knowledge of any discoverable matter. For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence. All discovery is subject to the limitations imposed by Rule 26(b)(2)(I), (ii), and (iii). FED.R.CIV.P. 26(b)(1).

**596**

when justice requires the protection of "a party or person from any annoyance, embarrassment, oppression, or undue burden or expense." FED.R.CIV.P. 26(c); *Landry,* 901 F.2d at 435. The court is required to balance the competing interests of allowing discovery and protecting the parties and deponents from undue burdens.

As state above, State Farm has not shown that allowing the discovery requested will cause it an undue burden or expense. Accordingly, the Court finds no good cause to enter a protective order under FED.R.CIV.P. 26(c).

### iii. Federal Rule of Civil Procedure 45(c)

 A motion to quash or modify under FED.R.CIV.P. 45(c)(3) requires a court to quash or modify a subpoena if it "subjects a person to undue burden." FED.R.CIV.P. 45(c)(3)(A)(iv). The individual seeking to quash or modify must meet "the heavy burden of establishing that compliance with the subpoena would be 'unreasonable and oppressive.'" *Williams v. City of Dallas,* 178 F.R.D. 103, 109 (N.D.Tex.1998) (quoting *Barnes Foundation v. Township of Lower Merion,* 1997 WL 169442, at *4 (E.D.Pa. Apr.7, 1997) (citations omitted)). "When a subpoena is issued as a discovery device, relevance for purposes of the undue burden test is measured according to the standard of Rule 26(b)(1)." *Williams,* 178 F.R.D. at 110. Thus, whether a subpoena is burdensome depends on the facts of the case. "Among the factors that the court may consider in determining whether there is an undue burden are 'relevance, the need of the party for the documents, the breadth of the document request, the time period covered by it, the particularity with which the documents are described and the burden imposed.'" *Williams,* 178 F.R.D. at 109 (quoting *Linder v. Department of Defense,* 133 F.3d 17, 24 (D.C.Cir.1998) (citations omitted)). The status of Perdue as a nonparty entitles Perdue to consideration regarding expense and inconvenience. *Williams,* 178 F.R.D. at 109.

As stated above, the Court finds that Perdue's expert reports are relevant to the Hussey's breach of the duty of good faith and fair dealing claim. Further, as stated above, neither State Farm nor Perdue has provided the Court with any evidence, through an affidavit or otherwise, that production of Perdue's expert reports completed for State Farm over the past five years relating to plumbing leaks would result in an undue burden. Accordingly, the Court will not quash or modify the subpoena.

### CONCLUSION

For the reasons articulated above, the Court concludes that State Farm's Motion to Quash Notice of Intention to take Deposition by Written Interrogatories of George Perdue and Motion for Protective Order is **DENIED.**