

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-20-00163-CV

_____

IN RE STATE FARM LLOYDS, Relator

Original Proceeding
96th District Court of Tarrant County, Texas
Trial Court No. 096-298884-18

Before Gabriel, Birdwell, and Womack, JJ.
Memorandum Opinion by Justice Womack

## MEMORANDUM OPINION

### I. INTRODUCTION

In this original proceeding, relator State Farm Lloyds seeks mandamus relief from an order requiring it to produce certain engineering reports to real parties in interest Lamont Frawley and Mary Frawley. Because the trial court clearly abused its discretion and because State Farm lacks an adequate remedy by appeal, we conditionally grant mandamus relief and order the trial court to vacate its May 26, 2020 "Order on Plaintiffs' Supplement to Motion to Compel Discovery Responses."

### II. BACKGROUND

As alleged in their petition, the Frawleys' home was insured by a homeowners' insurance policy issued by State Farm. The Frawleys later discovered damage to their home's foundation and walls, and they made a claim on their homeowners' policy, alleging that the damage was caused by plumbing leaks. State Farm's adjuster, Dan Wilson, hired an engineering firm, Bryant Consultants, Inc., to issue a report regarding the damage to the Frawleys' home. Bryant Consultants' report found that the damage was not caused by plumbing leaks but by foundation movement. State Farm then denied the Frawleys' claim based on the conclusions contained in Bryant Consultants' report.

The Frawleys filed suit against State Farm alleging both contractual and extra-contractual claims—they alleged claims of breach of contract, breach of the common law duty of good faith and fair dealing, violation of the Deceptive Trade Practices Act,

violation of the Texas Insurance Code, and violation of the Prompt Payment of Claims Act.[1] The Frawleys later served requests for production on State Farm, and Request for Production No. 5 asked State Farm to produce:

> [e]ach report issued by Bryant Consultants in connection with the investigation of a claim by you prior to its report issued in connection with the Claim made the basis of this suit. This request is limited to claims for alleged foundation damage in Texas for the five (5) years preceding the Claim made the basis of this suit.

State Farm made the following objections to Request for Production No. 5:

> State Farm objects to this Request on the grounds that it is overly broad in subject, and therefore unduly burdensome, constituting nothing more than a "fishing expedition," in violation of the letter and spirit of discovery law in the State of Texas. What may or may not have occurred with respect to another claim will neither prove nor disprove the existence of any mishandling of this claim. Further, information responsive to this request may contain confidential non-public personal information of State Farm insureds not party to this suit. State Farm also objects to this request because it is not reasonably tailored to the facts of this case. Requests seeking discovery regarding other claims exceed the scope of permissible discovery based on principles recently reiterated by the Texas Supreme Court. First, insurance claims are inherently individual and information regarding other claims is not probative of or relevant to Plaintiffs' contractual or extracontractual claims. *See In re Nat'l Lloyds Ins. Co.*, 449 S.W.3d 486 (Tex. 2014) (orig. proceeding) (per curiam). Second, such discovery will lead to "unnecessary case-within-a-case litigation." *In re Nat'l Lloyds Ins. Co.*, 2017 WL 2501107, at *1 (Tex. June 9, 2017). Third, this request is based on speculation and surmise and does not "bear . . . a reasonable expectation of obtaining information that will aid the dispute's resolution." *In re State Farm Lloyds*, 2017 WL 2323099, at *12 (Tex. May 26, 2017). Fourth, the request is unduly burdensome and disproportionate to the amount in controversy. Where the benefits of

---

[1]The Frawleys also brought claims against Wilson, the adjuster, alleging violation of the Deceptive Trade Practices Act and violation of the Texas Insurance Code.

proposed discovery are "negligible, nonexistent, or merely speculative," any expense associated with responding is "undue and sufficient to deny the requested discovery." *Id.* at *8.

The Frawleys filed a motion to compel relating to various discovery issues. The parties were able to resolve those disputes with the exception that they were unable to resolve their dispute regarding Request for Production No. 5 and their dispute relating to Interrogatory No. 17, which sought similar information to the documents sought in Request for Production No. 5.[2]  In their motion, the Frawleys argued that the requested documents and information were relevant to show bias and particularly relevant to their extra-contractual claims to show State Farm's knowledge of "how often [Bryant Consultants] concluded a leak caused damage and recommended repairs, thus resulting in payment of a claim."

State Farm filed a response to the Frawleys' motion that included two affidavits regarding the time and expense it would take to compile the documents and information requested by Request for Production No. 5 and Interrogatory No. 17.  In one affidavit, Donald Vinciguerra, a State Farm business analyst, stated that State Farm companies had 706 Texas claims in which State Farm paid Bryant Consultants for work during the subject five-year period.  In the other affidavit, Dan Staalsen, a State Farm claims team manager, stated that to obtain the documents and information

---

[2]Interrogatory No. 17 asked: "State the number of times you have relied upon a report, in whole or in part, issued by Bryant Consultants as a basis for a claim decision made by you prior to its investigation of the Claim made the basis of this suit.  This Interrogatory is limited to claims for alleged foundation damage in Texas for the five (5) years preceding the Claim made the basis of this suit."

4

sought by Request for Production No. 5 and Interrogatory No. 17, it would require a file-by-file review of the 706 claim files identified by Vinciguerra. Staalsen averred that it would take approximately one hour to one and a half hours to review each file to see if the file had the documents and information requested, and he estimated that it would cost State Farm an expense in excess of $26,298.50 to conduct the review. The Frawleys did not controvert Vinciguerra's or Staalsen's affidavits.

Following a hearing on the Frawleys' motion to compel, the trial court overruled State Farm's objections to Request for Production No. 5 and ordered State Farm to produce "responsive engineering reports, without redaction, within forty-five (45) days from the date of th[e] Order."[3] State Farm filed the present petition for writ of mandamus challenging that order, and we stayed the order pending our resolution of State Farm's petition.

## III. DISCUSSION

### A. Standard of Review

This court may grant mandamus relief from a discovery order only when (1) the trial court's decision is so arbitrary and unreasonable that it is "a clear and prejudicial error of law" and (2) the relator has no adequate remedy by appeal. *In re State Farm Lloyds*, 520 S.W.3d 595, 604 (Tex. 2017) (orig. proceeding). In determining whether the trial court abused its discretion, we may not substitute our judgment for the trial

---

[3] The trial court sustained State Farm's objections to Interrogatory No. 17.

court's determination of factual or other discretionary matters. *Id.* But because a trial court has no discretion in determining what the law is or applying it, we review its decisions on questions of law and application-of-law-to-fact questions much less deferentially. *Id.* A trial court abuses its discretion by clearly failing to correctly analyze or apply the law. *In re M-I L.L.C.*, 505 S.W.3d 569, 574 (Tex. 2016) (orig. proceeding).

When considering a claimed abuse of discretion, we are mindful that discovery's purpose is to seek the truth so that disputes may be decided by what the facts reveal, not by what they conceal. *In re Colonial Pipeline Co.*, 968 S.W.2d 938, 941 (Tex. 1998) (orig. proceeding). We also keep in mind that simply because requested information is discoverable "does not mean that discovery must be had." *State Farm Lloyds*, 520 S.W.3d at 605. And all discovery is "subject to the proportionality overlay embedded in our discovery rules and inherent" in the reasonableness standard. *Id.* at 599. In determining whether a trial court abused its discretion, we are generally bound by the record before the trial court at the time it made its decision. *M-I L.L.C.*, 505 S.W.3d at 574.

The scope of discovery is generally within the trial court's discretion so long as a discovery order does not exceed what the Rules of Civil Procedure permit. *See* Tex. R. Civ. P. 192.4; *State Farm Lloyds*, 520 S.W.3d at 604; *see In re N. Cypress Med. Ctr. Operating Co.*, 559 S.W.3d 128, 129 (Tex. 2018) (orig. proceeding) ("Our procedural

6

rules allow broad discovery of unprivileged information that is 'relevant to the subject matter of the pending action.'" (quoting Tex. R. Civ. P. 192.3(a)). To be discoverable, evidence must be relevant and nonprivileged, but it need not be admissible if it is reasonably calculated to lead to the discovery of admissible evidence. *See* Tex. R. Civ. P. 192.3(a); *In re Nat'l Lloyds Ins.*, 532 S.W.3d 794, 808 (Tex. 2017) (orig. proceeding) (*Nat'l Lloyds III*). Thus, although the permitted scope of discovery is generally broad, a discovery request "must show a reasonable expectation of obtaining information that will aid the dispute's resolution." *Nat'l Lloyds III*, 532 S.W.3d at 808 (quoting *In re CSX Corp.*, 124 S.W.3d 149, 152 (Tex. 2003) (per curiam) (orig. proceeding)).

Even when a trial court abuses its discretion in making a discovery ruling, we will not intervene if the relator has an adequate remedy by appeal. *In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 135–36 (Tex. 2004) (orig. proceeding). Appeal is inadequate when a discovery order compels production "beyond the rules of [civil] procedure." *In re Nat'l Lloyds Ins.*, 507 S.W.3d 219, 223 (Tex. 2016) (orig. proceeding) (*Nat'l Lloyds II*) (quoting *In re Nat'l Lloyds Ins.*, 449 S.W.3d 486, 488 (Tex. 2014) (orig. proceeding) (*Nat'l Lloyds I*)).

## B. Did the Trial Court Clearly Abuse Its Discretion?

State Farm advances three reasons why the trial court clearly abused its discretion. First, State Farm argues that the sought engineering reports are irrelevant. Second, State Farm argues that the production of the engineering reports would be

7

unduly burdensome, and the costs of production would be disproportionate to any benefit received by the Frawleys. Third, State Farm argues that the engineering reports contain confidential information of nonparties and that producing the engineering reports would violate the privacy interests of those nonparties.

### 1. Are the Engineering Reports Relevant?

Both sides have cited a litany of cases to support their respective views concerning the relevance of the engineering reports. Because we think it is instructive to our analysis, we will discuss several of these cases in depth. We begin by discussing three cases cited favorably by State Farm, *National Lloyds I*, 449 S.W.3d 486, *In re Interinsurance Exchange of the Automobile Club*, No. 01-14-00979-CV, 2016 WL 144784 (Tex. App.—Houston [1st Dist.] Jan. 12, 2016, orig. proceeding) (mem. op.), and *In re Hanover Lloyds Insurance Company*, No. 05-17-00608-CV, 2018 WL 1127436 (Tex. App.—Dallas March 2, 2018, orig. proceeding) (mem. op.).

In *National Lloyds I*, a homeowner filed insurance claims with her insurer after her home suffered damage from two storms. 449 S.W.3d at 487. Concerned that the insurer had undervalued her claims, the homeowner filed suit against her insurer alleging both contractual and extra-contractual claims. *Id.* at 487–88. During discovery, the homeowner requested that the insurer produce all claim files from the previous six years involving three different adjusters. *Id.* at 488. The insurer objected on relevancy grounds. *Id.* Following the homeowner's motion to compel, the trial court ordered that the insurer produce all claim files handled by two adjusters who

8

had adjusted the homeowner's claims, and it limited the production to claims made in the city in which the homeowner lived and further limited the production to claims arising from the storms that caused the damage to the homeowner's home. *Id.*

Despite the trial court's attempt to limit the scope of the discovery request, the Texas Supreme Court granted the homeowner's petition for writ of mandamus. *Id.* at 490. The court stated that it "fail[ed] to see how [the insurer's] overpayment, underpayment or proper payment of the claims of unrelated third parties [was] probative of its conduct with respect to [the homeowner's] undervaluation claims at issue." *Id.* at 489. This was "especially so given the many variables associated with a particular claim, such as when the claim is filed, the condition of the property at the time of filing . . . and the type and extent of damage inflicted by the covered event." *Id.* The court stated that "[s]couring claim files in hopes of finding similarly situated claimants whose claims were evaluated differently from [the homeowner's claim] [was] at best an 'impermissible fishing expedition.'" *Id.* Based on that logic, the court determined that the subject discovery request was not reasonably calculated to lead to the discovery of admissible evidence. *Id.* at 490. Accordingly, the Court granted mandamus relief and ordered the trial court to vacate its discovery order. *Id.*

In *Interinsurance Exchange of the Automobile Club*, the First Court of Appeals dealt with a case very similar to the present one. 2016 WL 144784. In that case, the homeowners made a claim against their insurer based on their home's foundation problems. *Id.* at *1. The insurer hired an engineer who opined that the foundation

9

problems were the result of settling rather than a plumbing leak. *Id.* The homeowners filed suit against the insurer alleging both contractual and extra-contractual claims, although the extra-contractual claims were later severed out of the lawsuit. *Id.* The homeowners deposed the engineer, who testified that he had performed more than fifty evaluations of claims for the insurer and that he found that foundation damage was caused by settling, rather than plumbing leaks, in approximately 70 to 80% of the foundation damage cases he handled for the insurer. *Id.* The homeowners then requested that the insurer produce every report the engineer had submitted to the insurer. *Id.* The insurer objected on the grounds that the request was overly broad and constituted a fishing expedition, and the homeowners filed a motion to compel, arguing that the documents were necessary to show bias and to show whether the engineer had applied acceptable methodology in evaluating their claim. *Id.* The trial court granted the motion to compel and ordered the insurer to produce every report the engineer had provided it during a twelve-year period. *Id.*

In reviewing the insurer's petition for writ of mandamus, the First Court of Appeals rejected the homeowners' argument that the engineering reports were necessary to show bias, noting that "[c]ourts have recognized that discovery into the extent of an expert's bias is not without limits" and that the Texas Supreme Court "has reasoned that the most probative information regarding the bias of a testifying expert comes from the testimony of the experts themselves." *Id.* at *2 (citing *In re*

10

*Ford Motor Co*, 427 S.W.3d 396, 397 (Tex. 2014) (orig. proceeding) (per curiam)). Relying on *National Lloyds I*, the First Court of Appeals also rejected the homeowners' argument that the engineering reports were necessary to demonstrate whether the engineer applied acceptable methodology in evaluating their claim. *Id.* at *3. The court noted that "each report prepared by [the engineer] would be affected by 'many variables associated with [that] particular claim'" and that said variables "are unique to each claim and have no bearing on whether the damage to the [homeowners'] house was actually caused by settling versus a leak." *Id.* (quoting *Nat'l Lloyds I*, 449 S.W.3d at 489). Accordingly, the court held that the engineering reports were not discoverable and granted mandamus relief. *Id.* at *3–4.

In *Hanover Lloyds Insurance Company*, Indoor Sports made a claim with its insurer, Markel Insurance Company, after it noticed damage to the roof on its building following a storm. 2018 WL 1127436, at *1. Markel hired HAAG Engineering to investigate the claim, and HAAG determined that the damage to Indoor Sports' roof was caused by a different storm. *Id.* That storm had occurred while Hanover Lloyds, not Markel, provided insurance to Indoor Sports. *Id.* Indoor Sports filed a claim with Hanover, and Hanover denied the claim. *Id.* Indoor Sports then filed a lawsuit against Hanover alleging both contractual and extra-contractual claims. *Id.* In the lawsuit, Indoor Sports alleged that Hanover had rejected HAAG's engineering report even though Hanover often relied on HAAG's engineering reports when making other claims decisions. *Id.* Indoor Sports later requested that Hanover produce fifty

11

engineering reports it had received from HAAG with respect to other storm damage claims in Texas. *Id.* at *1–2. Hanover objected to that request on relevancy grounds, and Indoor Sports filed a motion to compel. *Id.* at *2. The trial court then granted the motion and ordered Hanover to produce the engineering reports. *Id.*

In granting Hanover's petition for writ of mandamus, the Dallas Court of Appeals relied upon *National Lloyds I* and determined that the engineering reports were irrelevant. *Id.* at *3. The court noted that the trial court's order required Hanover to turn over evidence related to other claims and that "[a]lthough there is a remote possibility the requested discovery could lead to discovery of relevant evidence, [the court] fail[ed] to see how Hanover's use of HAAG engineering reports on claims of unrelated third parties [was] probative of Hanover's conduct with respect to its handling of this claim." *Id.*

Rather than relying on these cases, the Frawleys point to *State Farm Lloyds v. Nicolau*, 951 S.W.2d 444 (Tex. 1997), and a string of cases citing *Nicolau* to support their position that the trial court's discovery order was proper. *See State Farm Fire & Cas. Co. v. Simmons*, 963 S.W.2d 42, 44 (Tex. 1998); *USAA Tex. Lloyd's Co. v. Griffith*, No. 13-17-00337-CV, 2019 WL 2611015, at *8–10 (Tex. App.—Corpus Christi–Edinburg June 26, 2019, no pet.) (mem. op.); *State Farm Lloyds v. Hamilton*, 265 S.W.3d 725, 734–37 (Tex. App.—Dallas 2008, pet. dism'd); *State Farm Lloyds v. Johns*, No. 05-96-01039-CV, 1998 WL 548887, at *3 (Tex. App.—Dallas Aug. 31, 1998, no pet.) (not

12

designated for publication). Notably, none of these cases are discovery cases.[4] While

*Nicolau* involved evidence that an insurer had relied on an expert's report that was not

objectively prepared, *Nicolau* says nothing about the discovery limits placed on

obtaining such evidence. *See Nicolau*, 951 S.W.2d at 448.

Having reviewed the authorities cited by the parties, we think that the discovery

cases relied on by State Farm (particularly the *National Lloyds I*, *Interinsurance Exchange*,

and *Hanover Lloyds* cases discussed above) should guide our analysis rather than the

non-discovery cases relied on by the Frawleys.[5] Like the claim files at issue in *National*

---

[4]The Frawleys have cited only one discovery case to support their position, *Hussey v. State Farm Lloyds Ins. Co.*, 216 F.R.D. 591 (E.D. Tex. 2003). That case, however, is a federal case that predates *National Lloyds I*, and it is not binding precedent on our court. *See Penrod Drilling Corp v. Williams*, 868 S.W.2d 294, 296 (Tex. 1993) (holding that Texas state courts are only obligated to follow higher Texas courts and the United States Supreme Court); *Roe v. Ladymon*, 318 S.W.3d 502, 510 n.5 (Tex. App.—Dallas 2010, no pet.) ("Although we look to decisions of the lower federal courts and other state courts, only decisions of the United States Supreme Court, the Texas Supreme Court, and prior decisions of this Court are binding precedent.").

[5]In their response brief, the Frawleys attempt to distinguish *National Lloyds I*, *Interinsurance Exchange*, and *Hanover Lloyds*, but we are not persuaded by their reasoning. The Frawleys state that *National Lloyds I* is distinguishable because it involved claim files rather than engineering reports. We fail to see how that changes the analysis— that different claims/engineering reports are affected by the unique variables associated with those claims/engineering reports—particularly since the engineering reports are likely part of the larger claim file. The Frawleys attempt to distinguish *Interinsurance Exchange* by stating that it only involved contractual claims while the present case involves both contractual and extra-contractual claims. Again, we fail to see how that changes the analysis, particularly since both *National Lloyds I* and *Hanover Lloyds* involved both contractual and extra-contractual claims. *See Nat'l Lloyds I*, 449 S.W.3d at 488; *Hanover Lloyds*, 2018 WL 1127436, at *1. Finally, the Frawleys attempt to distinguish *Hanover Lloyds* by stating that the engineer making the report in that case had not been hired by Hanover but had been hired by a prior insurer. But as

13

*Lloyds I*, and like the engineering reports at issue in *Interinsurance Exchange* and *Hanover Lloyds*, the engineering reports sought here would be affected by "many variables associated with [that] particular claim, such as when the claim was filed, the condition of the property at the time of filing (including the presence of any preexisting damage)," and other factors. *Nat'l Lloyds I*, 449 S.W.3d at 489; *see Hanover Lloyds*, 2018 WL 1127436, at *3; *Interins. Exch.*, 2016 WL 144784, at *3. Those variables are unique to each claim and have no bearing on whether State Farm's investigation or reliance on Bryant Consultants' report was reasonable. *See Nat'l Lloyds I*, 449 S.W.3d at 489; *Hanover Lloyds*, 2018 WL 1127436, at *3; *Interins. Exch.*, 2016 WL 144784, at *3. And to the extent that the Frawleys seek the engineering reports to show bias, "discovery into the extent of an expert's bias is not without limits," and "the most probative information regarding the bias of a testifying expert comes from the testimony of the experts themselves." *Interins. Exch.*, 2016 WL 144784, at *2 (citing *Ford Motor Co.*, 427 S.W.3d at 397). In sum, the engineering reports are irrelevant because they do not appear reasonably calculated to lead to the discovery of evidence

---

aptly pointed out by State Farm in their reply brief, *Hanover Lloyds* is essentially the "mirror case" to the present one:

> [i]n other words, while [the Frawleys] here argue that it was unreasonable for State Farm to rely on [Bryant Consultants'] report based on its prior interactions with the firm, the *Hanover* plaintiffs made the mirror argument that it was unreasonable for the defendant to reject the HAAG engineering report based on its prior dealings with HAAG. While they may be flip sides of essentially the same argument, the fundamental flaw is the same: The individual nature of other claims renders the discovery not probative.

14

that has a tendency to make a fact more probable or less probable than it would be without the evidence. *See* Tex. R. Evid. 401; Tex. R. Civ. P. 192.3(a). As such, the trial court clearly abused its discretion by ordering their production. *See State Farm Lloyds*, 520 S.W.3d at 604; *M-I L.L.C.*, 505 S.W.3d at 574.

### 2. Is the Production of the Engineering Reports Unduly Burdensome and Disproportionate?

Although we have already determined that the trial court clearly abused its discretion because the engineering reports are irrelevant, we will also briefly consider whether the trial court also clearly abused its discretion because the production of the engineering reports would be unduly burdensome and disproportionate. The Texas Supreme Court has stated that "[w]hile litigants should have the opportunity to obtain the fullest knowledge of the facts and issues prior to trial, our rules also protect against unnecessary burgeoning of litigation costs." *Nat'l Lloyds III*, 532 S.W.3d at 813 (internal quotation omitted). Courts should thus undertake an analysis of the reasonableness and proportionality of sought discovery, "which is informed by factors the discovery rules identify as limiting the scope of discovery and geared toward the ultimate objective of obtain[ing] a just, fair, equitable and impartial adjudication for the litigants with as great expedition and dispatch at the least expense . . . as may be practicable." *State Farm Lloyds*, 520 S.W.3d at 599 (internal quotation omitted). Here, State Farm put on uncontroverted evidence that it would take at least 706 hours to

15

review the subject files at a cost of $26,298.50.[6] And pursuant to their original petition, the Frawleys were seeking damages "in an amount greater than $100,000 but no more than $200,000." Given the negligible relevance of the sought discovery (as discussed above), coupled with the uncontroverted evidence of the great time and expense State Farm would expend in obtaining the sought discovery, and given the amount in controversy in the case, the trial court clearly abused its discretion by ordering production of the engineering reports.[7] *See Nat'l Lloyds III*, 532 S.W.3d at 813; *State Farm Lloyds*, 520 S.W.3d at 599.

## C. Does State Farm Have an Adequate Remedy by Appeal?

When a trial court orders discovery that is irrelevant or is unduly burdensome and disproportionate, the trial court abuses its discretion, and the resisting party has no adequate remedy by appeal. *CSX Corp.*, 124 S.W.3d at 153; *In re ReadyOne Indus., Inc.*, 394 S.W.3d 680, 683 (Tex. App.—El Paso 2012, orig. proceeding); *In re Islamorada Fish Co. Tex., L.L.C.*, 319 S.W.3d 908, 913 (Tex. App.—Dallas 2010, orig. proceeding) (op. on reh'g). Because the trial court has ordered discovery that is irrelevant and is

---

[6]The Frawleys argue that this evidence amounts to no evidence at all because it was a cumulative estimate of the time it would take to review the files as it relates to both Request for Production No. 5 and Interrogatory No. 17. That argument fails to consider the interplay between Request for Production No. 5 and Interrogatory No. 17—which both concerned Bryant Consultants' engineering reports.

[7]Because we have determined that the trial court clearly abused its discretion because the engineering reports are irrelevant and their production would be unduly burdensome and disproportionate, we need not address State Farm's alternative argument that the trial court abused its discretion because producing the engineering reports would violate the privacy interests of nonparties. *See* Tex. R. App. P. 47.1.

unduly burdensome and disproportionate, State Farm lacks an adequate remedy by appeal.[8]

## IV. CONCLUSION

Because the trial court clearly abused its discretion by ordering State Farm to produce the engineering reports, and because State Farm has no adequate remedy by appeal, State Farm is entitled to mandamus relief.  Accordingly, we conditionally grant a writ of mandamus and direct the trial court to vacate its May 26, 2020 "Order on Plaintiffs' Supplement to Motion to Compel Discovery Responses."  *See* Tex. R. App. P. 52.8(c).  Our writ will issue only if the trial court fails to comply.

/s/ Dana Womack

Dana Womack
Justice

Delivered:  September 3, 2020

---

[8]In their response brief, the Frawleys do not suggest that State Farm has an adequate remedy by appeal.